## THE MOUNT SHASTA.

(District Court, D. Massachusetts. July 2, 1923.)

No. 1969.

1. **Shipping ⬚154—To give jurisdiction in rem to recover freight money, it must be indisputably due when suit is begun.**

Freight money due and payable constitutes a res of which an admiralty court has jurisdiction, but to give such jurisdiction the freight money must be clearly and indisputably owing when the suit is begun, and the court cannot assume it to be due in order to draw to itself jurisdiction to determine whether the assumption is correct.

2. **Admiralty ⬚10—Mere assertion of existence of res does not give jurisdiction in rem.**

The mere assertion in a libel that freight is due from a certain person, denied in good faith by the party charged, does not create a res within the jurisdiction of an admiralty court.

3. **Shipping ⬚154—Provision of charter party giving owner lien on subfreights subrogates owner to charterer's right to lien.**

The effect of a provision of a charter party giving the owner a lien on subfreights is to subrogate the owner to the remedies of the charterer in respect thereto, and the owner cannot maintain a suit to recover freight money alleged to be due from a cargo owner, which neither the vessel nor the charterer could recover.

In Admiralty. Suit by the United States against the freights, subfreights, etc., of the steamship Mount Shasta. Dismissed for want of jurisdiction.

Charles P. Curtis, Jr., of Boston, Mass., for the United States.

Gaston, Snow, Saltonstall and Russell, Moore & Russell, all of Boston, Mass., for Palmer & Parker Co.

MORTON, District Judge. This is a libel by the United States, as owner of the steamship Mount Shasta, against certain subfreights alleged to be due to her. Palmer & Parker Company, from whom, as the libel alleges, the subfreights in question are due, has appeared to deny that allegation and the jurisdiction of the court, and the case has been heard only upon the question of jurisdiction. The facts on this issue are as follows:

The Mount Shasta is a Shipping Board vessel, which, on May 19, 1920, was chartered under the usual charter sale form to the Mount Shasta Steamship Company. The charter provided that:

"The owner shall have a lien upon all cargoes and all subfreights for any amounts due under this charter party."

Under date of July 14, 1920, the charterer, through its agents, Fox & Co., made a cargo charter of the steamer to Palmer & Parker Company of Boston, for a voyage to the Gold Coast, West Africa, for mahogany logs; the Palmer & Parker Company agreeing to furnish a full cargo and to pay a stipulated freight. By this subcharter, 50 per cent. of the estimated freight was payable in New York upon advice from the master that the cargo has been loaded.

The steamer proceeded to Axim, on the Gold Coast, and at that port

and Secondi, near by, she loaded a cargo. The advance freight was paid, and she began her homeward voyage. She was greatly delayed by the failure of the charterer (by which I mean the Mount Shasta Steamship Company and its agents, Fox & Co.) to remit funds with which to pay for necessary coal, cleaning the hull, and repairs to the machinery; so that the voyage, instead of taking about 30 days, as it ought to have done, was not completed for about 5 months. This delay was caused entirely by the fault of the charterer; the cargo owner was in no way responsible for it. The cargo owner from time to time made advances to the master to enable the steamer to proceed although it was under no obligation to do so.

The government contends that there is due to the steamer under the cargo charter about $37,000 freight money and $12,000 demurrage, and that by the terms of its charter it is entitled to maintain a suit in rem against these moneys in the hands of Palmer & Parker Company. Palmer & Parker Company, on the other hand, contend that the steamer was unseaworthy and that this defect and deviation and delay caused damage to an amount largely in excess of the unpaid freight money, that no freight money is due, and that there is therefore no res and no basis of jurisdiction.

It should be noticed that the present proceeding is not against Palmer & Parker Company, nor against the cargo, which has in effect been delivered clear of lien. It is not a proceeding to which either the vessel or her charterer, or the cargo owner is a party. It is, as has been said a libel in rem by the owner against freight money alleged to be due the vessel from Palmer & Parker Company.

[1, 2] I assume, as contended by the libelant, that freight money due and payable constitutes a res of which an admiralty court has jurisdiction; but to have that effect the freight money must be actually due, and liability for it must, I think, either be admitted by the person charged, or must be so clear and obvious as to leave no room for bona fide denial. The mere assertion that freight is due from a certain person, denied in good faith by the party charged, does not, it seems to me, create a res within the jurisdiction of the admiralty court. Such a claim might be made the basis of a suit. But a claim is not a res in this sense. A suit of this character is basically different, as was recently pointed out in The Yankee Blade, 19 How. 82, 15 L. Ed. 554, cited in Kaisha v. Pacific Export Co., 43 Sup. Ct. 172, 67 L. Ed. —— (Feb. 1, 1923), from a proceeding to enforce a disputed claim or garnishee process. The res is in the nature of a fund in controversy. It must exist when the suit is begun or there is no foundation of jurisdiction. And the court cannot assume that freight money is due in order to draw to itself jurisdiction to determine whether that assumption is correct.

No case in admiralty which throws much light on the question has come to my attention. In American Steel Barge Co. v. C. & O. Coal Agency, 115 Fed. 669, 53 C. C. A. 301, relied on by the libelant, there seems to have been no question as to the freight being due. There is, however, a rather close analogy in the jurisdiction of the bankruptcy court over summary proceedings brought by a trustee to recover in

the hands of a third person property alleged to belong to the bankrupt estate. If the ownership is conceded to be in the estate, summary process lies; and it also lies if the denial of the estate's title is obviously unfounded and colorable. But if the possessor of the property claims to own it in good faith, that is the end of summary jurisdiction. In re Tarbox (D. C.) 185 Fed. 985. There is a suggestion of what amounts to the same practice in the opinion in the American Steel Barge Co. Case, 115 Fed. 674, 53 C. C. A. 301.

The general appearance by Palmer & Parker Company did not, under the facts disclosed, amount to an admission that there was such a res and that consequently the court had jurisdiction. See The Berkeley Deas v. Berkeley, 58 Fed. 920. Nor is the mere fact that goods have been transported and compensation earned for that service necessarily sufficient to establish that fact. Freight money in a proceeding of this character is the sum clearly and indisputably due to the vessel from the cargo owner or consignee when the libel is filed. Snow v. Carruth, Fed. Cas. No. 13,144, 1 Sprague (Mass. D. C.) 324.

[3] The government's only right in the matter rests on the provision in its charter party to the Mount Shasta Steamship Company that:

"The owner shall have a lien upon all cargoes and all subfreights for any amounts due under this charter party."

With nothing but this to go on, the government is in effect trying to cut in ahead of both the vessel and her charterer, and to compel the cargo owner to pay to it sums which could not be recovered by either of the others; the result being (if the government's position is sustained) that the cargo owner must pay to it the entire freight, although having suffered heavy loss by the bad condition and mismanagement of the vessel, and be remitted for reimbursement to a claim against a bankrupt concern into whose hands the government placed her. The government's rights rest on the charter party and must be worked out through the person with whom the government contracted. In the opinion in the American Steel Barge Co. Case, supra, it is said that:

"A libelant holding a lien on subfreight becomes subrogated to all the remedies of the charterer." 115 Fed. 674, 53 C. C. A. 306.

If neither the steamer nor her charterer have any lien in respect to these freights, the government has none. Vane v. A. M. Wood & Co. (D. C.) 231 Fed. 353, 355. The delivery of the cargo terminated all maritime liens upon it. The controversy between the vessel and her charterer on one side, and the cargo owner on the other, can be tried out in several different ways; but it cannot be tried out in a suit like the present proceeding to which none of them are parties.

I have no doubt that Palmer & Parker Company are acting in entire good faith in denying that anything is due from them to the steamer, and in asserting that, on the contrary, they have a claim against her substantially in excess of all sums claimed to be due as freight and demurrage. It is unnecessary to discuss the other points argued. I find and rule that no case is shown within the jurisdiction of this court, and for that reason alone an order may be entered dismissing the libel.