422 F.2d 804
 MARINE TRADERS, INC., Plaintiff-Appellant,
v.
SEASONS NAVIGATION CORPORATION, United States Steel
International (New York), Inc. (formerly known as United
States Steel Export Company), United States Steel
Corporation, and Freights, Sub-freights and/or Charter Hire
of the Vessel Granapolis in the amount of $171,431.06 held
by United States Steel International (New York), Inc.
(formerly known as United States Steel Export Company)
and/or in the hands of United States Steel Corporation,
Defendants-Appellees.
 No. 219, Docket 33615.
 United States Court of Appeals, Second Circuit.
 Argued Nov. 7, 1969.
Decided Feb. 24, 1970.
 
 Richard Gyory, New York City (Cooper, Ostrin, DeVarco & Ackerman, Levin, Kreis, Ruskin & Gyory, Lester M. Levin, Herbert B. Ruskin, New York City, of counsel), for plaintiff-appellant.
 Edward L. Smith, New York City (Kirlin, Campbell & Keating, Walter P. Hickey, William J. Crabtree, New York City, of counsel), for defendants-appellees United States Steel International (New York), Inc. and United States Steel Corp.
 Before FRIENDLY, SMITH and HAYS, Circuit Judges.
 HAYS, Circuit Judge:
 
 
 1
 This is an appeal from so much of a judgment of the United States District Court for the Southern District of New York as dismissed appellant's action against United States Steel International (New York), Inc., United States Steel Corporation and the subfreights of the vessel Granapolis.
 
 I.
 
 2
 On April 11, 1963 Marine Traders, Inc. ('Marine') time chartered the vessel Granapolis to Seasons Navigation Corporation ('Seasons') for a two-month 'Transatlantic round voyage via U.S. Gulf and North Continent.' The time charter was the standard 'Government Form Approved by the New York Produce Exchange' and provided in paragraph 18:
 
 
 3
 'That the Owners shall have a lien upon all cargoes, and all sub-freights for any amounts due under this Charter, including General Average contributions, and the Charterers to have a lien on the Ship for all moneys paid in advance and not earned, and any overpaid hire or excess deposit to be returned at once * * *.'
 
 
 4
 Seasons had previously contracted with United States Steel International (New York), Inc. ('International'), a wholly owned subsidiary of United States Steel Corporation ('Steel'), to carry to Chittagong, Pakistan, certain steel products which International had sold to Pakistani buyers.
 
 
 5
 Between April 20 and May 5, 1963, the Granapolis loaded this cargo at Baltimore and Mobile. Prepaid bills of lading were issued for the cargo; however, not all designated the Granapolis as the carrying vessel. A portion of the bills of lading had been issued when it was contemplated that the steel products described therein would be carried on the vessel Smith Explorer. These shipments were shut out of the Smith Explorer and subsequently loaded on the Granapolis. The bills of lading were not changed to designate the Granapolis as the carrying vessel. Although all the bills of lading for the cargo loaded on the Granapolis provided for carriage from the port of loading to Chittagong, Pakistan, it was understood that the Granapolis would carry the cargo only to Antwerp, Belgium, where it would be transshipped for on-carriage to Chittagong on other vessels. The total freight for the through carriage to Chittagong under these bills of lading amounted to $586,602.44.
 
 
 6
 On April 22, 1963, pursuant to arrangement with Seasons, International paid to Wall Street Traders, Inc., Marine's agent, the sum of $147,000 as the first month's hire under the charter party. This sum was treated as an advance on account of freights on Granapolis cargo.
 
 
 7
 The Granapolis left Mobile on May 5, 1963 bound for Antwerp, Belgium, where she arrived on May 21, 1963. By this time, Seasons had defaulted on the payment of the second installment of the charter hire, which had become due on May 20, 1963, and was also unable to pay for unloading, transshipment or oncarriage of the cargo. Marine requested International to unload and store the cargo of the Granapolis but International refused. Marine thereupon arranged for stevedoring, unloading and storage of the cargo. On June 1, 1963, the unloading of the Granapolis was completed, and the vessel sailed for the United States. The unpaid charter hire, together with maritime expenses connected with the charter, and the costs of unloading at Antwerp, amounted to $167,895.48.
 
 
 8
 Marine instituted this action in the United States District Court for the Southern District of New York against Seasons, International, Steel and the sub-freights of the vessel Granapolis to recover the unpaid charter hire and the related expenses. After a trial before Judge Milton Pollack, judgment was entered against Seasons in favor of Marine in the amount of $167,895.48, plus interest thereon of $58,763.42. The action as to the other defendants was dismissed. Marine appeals from the dismissal.
 
 II.
 
 9
 Since Seasons is no longer in existence, Marine seeks to recover its unpaid charter hire and the expenses of unloading at Antwerp out of the total freights for the carriage of the cargo to Chittagong, amounting to $586,602.44. International defends on the grounds that Marine may assert a lien against only so much of the freights for the entire carriage to Chittagong as are allocable to the Antwerp leg of the carriage and that this lien has been discharged by good faith payments by International to Seasons on account of freights on cargo carried on the Granapolis. We agree and accordingly affirm the order of dismissal.
 
 
 10
 To secure the payment of sums due under a charter of his ship, a shipowner may create, by express provision in the charter party, a lien on the subfreights earned by his vessel. In re North Atlantic and Gulf Steamship Co., 204 F.Supp. 899, 904 (S.D.N.Y.1962), affirmed sub nom. Schilling v. A/S D/S Dannebrog, 320 F.2d 628 (2d Cir. 1963). See Raymond v. Tyson, 58 U.S. (17 How.) 53, 15 L.Ed. 47 (1854); Hall Corporation of Canada v. Cargo Ex Steamer Mont Louis, 62 F.2d 603 (2d Cir. 1933); Poor, Charter Parties and Ocean Bills of Lading 16 at 47-48 (5th ed. 1968).
 
 
 11
 The Granapolis earned subfreights for the carriage of her cargo from Baltimore and Mobile to Antwerp. It was never intended that the Granapolis should carry the cargo farther than Antwerp; the charter party expressly provided for a round trip transatlantic voyage from the U.S. Gulf to the North Continent and return. The lien on subfreights is granted and delimited by the terms of the charter party, and nothing appears to indicate that the parties intended to create a lien on subfreights earned by other vessels in the on-carriage of the cargo from Antwerp to Chittagong, Pakistan.
 
 
 12
 The subfreights earned by the Granapolis, on which its owners Marine may assert a lien, are equal to that proportion of the total freights for the through carriage to Chittagong which is allocable to the U.S.-Antwerp portion of the carriage. It was stipulated that the going freight rate from U.S. Atlantic ports to Chittagong ranged, for the products carried, from $35.25 to $38 per long ton and that the rate from U.S. Atlantic ports to Antwerp for the same products was $13.25. The freights for the Antwerp leg of the carriage thus represent no more than 13/35ths of the entire freights for through carriage to Chittagong, and Marine had a valid lien on this proportion of the through freights of $586,602.44.
 
 III.
 
 13
 A shipowner's lien on subfreights is discharged by good faith payments by the shipper to the charterer without notice of the shipowner's rights. Hall Corporation v. Cargo Ex Steamer Mont Louis, supra at 605. Besides the $147,000 payment of the first installment of the charter hire made by International for Seasons directly to agents of Marine and applied by Seasons on account of freights on cargo shipped on the Granapolis, International made additional payments totalling $237,377.24 to Seasons or its designees in early April, 1963 on account of freights on cargo subsequently shipped on the Granapolis. These payments were made in good faith before International received notice of Marine's lien on subfreights, and since together with the direct payment of $147,000 these payments represent greater than 13/35ths of the freights for the through voyage, they operate to discharge Marine's lien on subfreights. See Poor, supra at 49.
 
 
 14
 International's payments were made as follows:
 
 
 15
 On April 5, 1963, International paid certain amounts to Seasons as freight on cargo received at Mobile for carriage to Chittagong on the vessel Smith Explorer. A portion of this cargo was shut out of the Smith Explorer and subsequently loaded on the Granapolis. The freight on the cargo loaded on the Granapolis was $60,421.59. This sum was subsequently treated as freight on the Granapolis cargo.
 
 
 16
 On April 10, 1963, International made certain payments to Morgan Guaranty Trust Co. for the account of Seasons as payment for cargo received for carriage to Chittagong on the vessel Dearborn or the vessel Smith Explorer. A portion of this cargo was also subsequently shut out of these vessels and loaded on the Granapolis. The freight on the cargo loaded on the Granapolis was $162,876.45. This sum was subsequently treated as freight on the Granapolis cargo.
 
 
 17
 On April 15, 1963, Seasons credited International with an overpayment of freight on cargo shipped on the Smith Explorer. The credit of $14,079.20 was treated as an advance on freights on cargo shipped on the Granapolis.
 
 
 18
 Marine, relying on American Steel Barge Co. v. Chesapeake & Ohio Coal Agency Co., 115 F.2d 669, 53 C.C.A. 301 (1st Cir. 1902) urges that these payments, and particularly those made before the charter party was executed on April 11, 1963, must be treated as loans rather than as prepayments of freight. We cannot accede to this contention. American Steel Barge Co. is distinguishable. There the court stated that it was not dealing with the situation where the advances were 'given on the expectation of offsetting them against * * * freight.' Id. at 678. This was precisely International's expectation in making the advances to Seasons. The payments were made on account of freights on cargo to be carried to Chittagong. The cargo to which these freight prepayments applied was subsequently loaded and carried on the Granapolis under the original bills of lading, and the payments thereon were credited to the freights of the Granapolis. Certainly if the payments had been made to Seasons just prior to the expected loading of the cargo on the other vessels and had been credited to the freights of the Granapolis when the cargo was loaded on her instead, there could be no question of their validity as prepayments of freight on Granapolis cargo. We do not see that it makes any difference that the prepayments were initially earmarked on account of freights on other vessels.
 
 
 19
 For these reasons, we affirm the judgment of dismissal.