**MCT SHIPPING CORPORATION,**
**Plaintiff,**

**v.**

**Hormoz SABET, Paolo G. Mizeo, Ali Kashfi, Serge Bezroukeh, Erik Murrer, John Batson, Iran Ocean Shipping Company, Ltd., International Maritime Planning and Commercial Technology Inc., Peralta Shipping Corporation, in personam and subfreights of the M/V KOH EUN, in rem, Defendants.**

**No. 77 CIV 6047 (LBS).**

United States District Court,
S. D. New York.

Sept. 4, 1980.

---

Burlingham, Underwood & Lord, Michael Marks Cohen, New York City, for plaintiff.

Healy & Baillie, Howard M. McCormack, New York City, for defendants Hormoz Sabet, Paolo G. Mizeo, Ali Kashfi and Serge Bezroukeh.

McHugh, Heckman, Smith & Leonard, Robert P. Whelan, New York City, for defendants Erik Murrer, John Batson and International Maritime Planning and Commercial Technology, Inc.

Poles, Tublin, Patestides & Stratakis, William J. Burke, New York City, for defendant Peralta Shipping Corp.

## OPINION

SAND, District Judge.

MCT Shipping Corporation ("MCT"), the disponent owner of the M/V KOH EUN ("Koh Eun"), seeks in this action to confirm an arbitration award against the charterer of its vessel, Iran Ocean Shipping Company, Ltd. ("IROSCO"), to enforce maritime liens on Koh Eun subfreights, and to hold IROSCO, as well as certain of its agents, representatives, officers and directors, liable *in personam* for repudiation of the charter and abandonment of the loaded vessel in the middle of the voyage. Currently before the Court are the following motions: 1) plaintiff's motion for an order confirming its arbitration award against IROSCO pursu-

ant to 9 U.S.C. § 9 (1970) and entering final judgment thereon pursuant to F.R.Civ.P. 54(b); 2) plaintiff's motion for an order enforcing its claimed maritime lien and directing payment of the funds currently held in escrow according to its directions in partial satisfaction of the judgment resulting from its arbitration award against IROSCO; 3) plaintiff's "conditional cross–motion", in the event that any of the escrowed funds arrested as subfreights are found not to constitute subfreights, for an attachment of such funds pursuant to F.R.Civ.P. 64 and CPLR § 6201(3) (McKinney 1980), to take effect *nunc pro tunc* as of December 13, 1977; 4) plaintiff's motion for leave to file an amended complaint; 5) a motion by defendant Peralta Shipping Corporation ("Peralta") for summary judgment and for an order dismissing plaintiff's claims of maritime liens; 6) a motion by defendants Erik Murrer, John Batson and International Maritime Planning and Commercial Technology, Inc. ("Impact") (collectively referred to herein as the "Impact defendants"), for an order vacating the arrest and attachment by garnishment of funds now held in escrow either as Koh Eun subfreights or assets of IROSCO previously held by Impact; 7) a motion by the same defendants for an order dismissing the complaint for lack of jurisdiction pursuant to F.R.Civ.P. 12(b)(1), for failure to state a claim pursuant to F.R.Civ.P. 12(b)(6) or, in the alternative, for summary judgment pursuant to F.R.Civ.P. 56(b); 8) a motion by defendants Hormoz Sabet, Paolo G. Mizeo, Ali Kashfi and Serge Bezroukeh (referred to collectively herein as the "Iranian defendants"), for an order dismissing the complaint for lack of personal jurisdiction pursuant to F.R.Civ.P. 12(b)(1), for failure to state a claim pursuant to F.R.Civ.P. 12(b)(6), or in the alternative, for summary judgment pursuant to F.R.Civ.P. 56(b). After a brief description of the relevant facts and identity of the parties, we deal first with plaintiff's arbitration award and then with the fate of the funds currently held in the escrow account. We then turn to plaintiff's motion to amend the complaint and to defendants' motions in the order listed.

## I. *The Factual and Procedural Background.*

On October 11, 1977, MCT and IROSCO apparently entered into a standard New York Produce Exchange Time Charter Party providing, *inter alia*, for arbitration in New York of all disputes between owner and charterer (clause 17) giving MCT a maritime lien on all cargo and subfreights for any amounts due under the charter (clause 18), and prohibiting IROSCO from creating or allowing to persist any maritime liens arising from its operation and use of the vessel (*Id.*). Although the charter form was never signed by either party, no question as to its validity has been raised and plaintiff claims that the terms of the charter were fixed in telex exchanges between brokers for the respective parties. In addition, the arbitrator found that IROSCO "tacitly confirmed [the charter party's] ... authenticity by accepting delivery on October 18, 1977 at Norfolk and paying two installments of hire through December 17, 1977 ....". (Cohen Affidavit, Ex. 111).

The arbitrator found that during October and November of 1977, IROSCO loaded cargoes aboard the Koh Eun at Sept Iles, Montreal, Baltimore and Norfolk, and issued Koh Eun bills of lading for discharge of these cargoes at various Middle Eastern and Far Eastern ports. On or about December 5, 1977, after IROSCO's local agent in Norfolk brought suit to foreclose a maritime lien on the Koh Eun for certain stevedoring and port services, IROSCO advised MCT that it was abandoning the voyage at Norfolk and was redelivering the vessel back to the disponent owners. Plaintiff thereafter bonded the ship out and completed the voyage delivering all cargoes to proper destinations until redelivery to the vessel owners at Karachi on March 6, 1978.

Reserving its right to arbitrate under the charter party, plaintiff subsequently brought suit for breach of charter against IROSCO, and for "conspiracy" and fraud against Peralta, IROSCO's North American general agent, Impact, IROSCO's North American "representative", and all of the

individual defendants, who were officers or directors of either IROSCO and/or Impact. Motions by the defendants to dismiss and for summary judgment were continued in July of 1978 pending completion of discovery. On July 5, 1978, after IROSCO failed to respond to plaintiff's demands for arbitration, this Court, after IROSCO's default, granted a motion to compel arbitration of the MCT/IROSCO dispute and designated an arbitrator to serve on IROSCO's behalf should it fail to make an appointment of its own by July 26, 1978. IROSCO again defaulted and the arbitration proceeded in its absence. The arbitrator's decision describes in detail the numerous, unsuccessful attempts to contact and elicit some response from IROSCO. At the arbitration proceeding, at which IROSCO never appeared, plaintiff sought to recover port charges, stevedoring expenses, fuel costs and miscellaneous related expenses incurred in completing the voyage which would have been paid by IROSCO if it had fulfilled its obligations under the charter. MCT also sought the balance of hire and crew overtime unpaid by IROSCO from December 17, 1977 thru March 6, 1978. On September 24, 1979, the arbitrators unanimously awarded plaintiff $574,709.99 plus various costs and interest at 10% per annum from the date of the award until the date of payment or judgment, whichever occurs first. (Cohen Aff., Ex. 111). Plaintiff now seeks a confirmation and a Rule 54(b) "certification" of this award.

Prior to proceeding to arbitration, plaintiff sought to exercise its maritime lien on Koh Eun cargoes and subfreights by giving notice to various shippers, freight forwarders and agents. Plaintiff foreclosed on the lien by arresting, *inter alia*, alleged subfreights in the hands of Peralta and funds on deposit in Impact accounts at the Chemical Bank of New York. At a hearing before Honorable Robert E. Ward of this Court on January 10, 1978, Peralta conceded that it held $79,386.25 in money paid to it as Koh Eun subfreights and consented to an order requiring deposit of that amount into the registry of the Court. At the same hearing, Impact moved to vacate the arrest

of its bank accounts at the Chemical Bank. Judge Ward ruled that $1,737.95 in those accounts were paid to Impact as Koh Eun subfreights, and that $25,000 were other funds belonging to IROSCO. The Court thus vacated the arrest of the Chemical Bank accounts except for the $1,737.95 in subfreights, but simultaneously granted plaintiff a civil attachment of the $25,000 constituting other IROSCO funds. By consent of the parties, all of these funds which were arrested or attached, as well as $3,353.94 of subfreights apparently collected by plaintiff from a Canadian shipper, were deposited in an interest bearing escrow account. After $3,375 was paid out of the funds in Impact seized Chemical Bank accounts in settlement of a claim by IROSCO's broker for commissions in connection with the charter of the Koh Eun, the total escrow fund amounted to $106,103.14 which breaks down as follows:

| | |
|---|---|
| $ 79,386.25 | in Koh Eun subfreights arrested while in the hands of Peralta |
| 1,737.95 | in Koh Eun subfreights arrested while in the hands of Impact |
| 21,625.00 | in IROSCO funds in the hands of Impact subject to civil attachment |
| 3,353.94 | in Koh Eun subfreights collected by plaintiff from the Canadian shipper |

$106,103.14

These funds are the subject of plaintiff's motion for an order directing payment in partial satisfaction of the judgment it seeks in its motion for confirmation and certification of its arbitration award.

II. *The Arbitration Award.*

A. *Confirmation*

■ The Court's role in a confirmation proceeding under 9 U.S.C. § 9 is a limited one. Where an arbitration award has a basis which can be rationally inferred, the award must be upheld unless a statutory ground for vacating the award under 9 U.S.C. § 10 (1970) exists. *See Kurt Orban Co. v. Angeles Metal Systems*, 573 F.2d 739, 740 (2d Cir. 1978); *Sobel v. Hertz, Warner & Co.*, 469 F.2d 1211 (2d Cir. 1972). Absent a showing of "manifest disregard of the

law", an award must be upheld even if the arbitrator misinterpreted the law or the facts. *Maidman v. O'Brien*, 473 F.Supp. 25 (S.D.N.Y.1979).

In this case, the arbitrator's opinion, which carefully outlines the attempts made to contact IROSCO, demonstrates no such disregard, and no showing of a statutory ground for vacating the award has been made. In the absence of an appearance by IROSCO, plaintiff's version of the essential facts in the arbitration was uncontested. No party to the arbitration has raised any objection to the award since IROSCO has yet to appear before this Court. However, while none of the remaining defendants were parties to, or sought to participate in the arbitration proceeding, Peralta now seeks to "reserve" the right to object to the portion of the award which reimburses plaintiff for legal expenses incurred in connection with a variety of matters stemming from IROSCO's breach of the charter party. In addition, the Impact defendants argue in their most recent papers that MCT, rather than IROSCO, breached the charter.

We reject both of these contentions and conclude that the arbitration award should be confirmed. Whatever the standing of Peralta or the Impact defendants as non–parties to the arbitration proceeding to object to the arbitration award, the arguments they raise are without merit. Peralta offers no reason for subjecting the arbitrators' decision concerning plaintiff's attorneys' fees to a standard of review different from the standard applied to the arbitrator's award of damages for other expenses incurred by plaintiff as a result of IROSCO's breach, nor has Peralta demonstrated why its objection should be preserved. The award is not concerned with plaintiff's legal fees in connection with either this confirmation proceeding or the arbitration proceeding itself. *See, e. g., General Drivers, Helpers and Truck Emp. Local No. 120 v. Sears Roebuck & Co.*, 535 F.2d 1072 (7th Cir. 1976). Finally, we are not at this point inclined, at the behest of Impact, to conduct a *de novo* review of the question of who breached the charter party. Such a review could not be conducted without undermining the role of the arbitrator envisioned by the case law interpreting 9 U.S.C. § 9.

Plaintiff's arbitration award is confirmed.

### B. *Certification Under F.R.Civ.P. 54(b).*

In a suit involving multiple claims or parties, an order granting final judgment as to one or more but fewer than all of the claims or parties terminates the action as to such claims or parties only if the court expressly determines that there is no just reason for delay and directs entry of judgment. F.R.Civ.P. 54(b). In the absence of such a determination and direction (referred to together herein as "certification"), MCT will be unable to enforce its arbitration award against the escrow account or any other IROSCO funds, and IROSCO, will be unable to appeal this Court's confirmation order until final judgment is entered in all of plaintiff's remaining claims. There is no question that this case involves multiple claims and parties, and that plaintiff's confirmed arbitration award constitutes a final adjudication of its rights and IROSCO's liabilities under the charter. The question then, is whether there is "no just reason" for delaying certification.

Both the structure and judicial treatment of Rule 54(b) make clear that certification should not be granted routinely, and that the normal rule is that no appeal will be heard until the entire case has been completed. *See generally*, 10 Wright & Miller, *Federal Practice and Procedure* § 2659 (1973). This strong federal policy against piecemeal appellate review has led many courts to conclude that rule 54(b) certification should be granted only where a failure to do so might have a "harsh effect". *See, e. g., Brunswick Corp. v. Sheridan*, 582 F.2d 175, 183 (2d Cir. 1978). The Supreme Court has recently indicated, however, without explicitly rejecting the "harsh effect" test, that the focus of a role 54(b) inquiry should be on the relationship between the adjudicated and the unadjudicated claims and on the likelihood that un-

necessary appellate review will result from a certification of the adjudicated claims. *Curtiss–Wright Corp. v. General Electric Co.,* —— U.S. ——, 100 S.Ct. 1460, 64 L.Ed.2d 1 (1980). Applying the principles set forth in *Curtiss–Wright,* we conclude that certification of plaintiff's confirmed arbitration award is appropriate at this time.

■ The arbitration award at issue in this case involves a claim for breach of charter party by MCT against IROSCO. This claim, which involves an assessment of the parties' respective rights and liabilities under the charter, is distinct from and raises issues wholly independent of plaintiff's claim of fraud and civil conspiracy against the remaining defendants. More importantly, whatever factual overlap between the two claims may exist, the issues on appeal from plaintiff's arbitration award will be completely different from and far more limited than the issues considered on the appeal that may ultimately result from this Court's disposition of the remaining claims. Certification thus would not result in unnecessary appellate review.

Peralta claims that certification should be denied because plaintiff will seek to enforce its judgment against the escrow funds while "Peralta has competing claims for some of those funds . . . and the total amount available is not sufficient to satisfy both plaintiff and Peralta". (Peralta's Supplementary Memorandum of Law at 10–11). Peralta's "claims" allegedly stem from disbursements it made on IROSCO's behalf for which it has yet to be reimbursed as well as from commissions owed to Peralta as IROSCO's general agent (Peralta Deposition at 86, 149, 238–239, 251, 262). Whatever the actual nature or validity of Peralta's claims against IROSCO, no such claims are involved in this litigation, and the Court is aware of no other forum in which such claims are being pursued. Although this suit has been pending for more than two years, Peralta has not filed a crossclaim against IROSCO or any other defendant. In our view, Peralta's inchoate "claims" do not constitute a just reason for delay under rule 54(b).

Since there is no just reason for delay, the Court hereby directs entry of judgment on plaintiff's arbitration award pursuant to F.R.Civ.P. 54(b). In view of our resolution of the maritime lien and attachment questions, however, enforcement of this judgment against the escrow account is stayed for thirty days. *See* discussion, *infra.*

### III. *The Escrow Account*

#### A. *The Maritime Lien Question*

Plaintiff contends that it has a maritime lien on the $81,124.20 in the escrow account which Judge Ward found was money paid to Impact or Peralta as Koh Eun subfreights, as well as on the $3,353.94 collected from the Canadian shipper. Since this lien "has priority over everyone else's claims" (Plaintiff's Reply Memorandum at 8), plaintiff seeks an order directing payment of $84,478.14 to it in partial satisfaction of its judgment against IROSCO.[1] Peralta and the Impact defendants seek an order dismissing plaintiff's claim of maritime lien and vacating the arrests. We begin with the $81,124.20 originally in hands of Impact and Peralta.

The parties agree that clause 17 of the MCT/IROSCO charter gives plaintiff a maritime lien on all subfreights owed to IROSCO by shippers or freight forwarders. Defendants argue, however, that once payment is made to the charterer or its agent, the shipowner's lien on subfreights is discharged. *See, e. g., Tarstar Shipping Co. v. Century Shipline, Ltd.,* 597 F.2d 837, 839–840 (2d Cir. 1979) (dictum) (once paid to a charterer's agent, "we do not doubt that the freights would have . . . lost their character as an independent *res* to which the owner's lien could attach"); *Union Industrielle et Maritime v. Nimpex,* 459 F.2d 926, 930 (7th Cir. 1972) ("freight" ceased to be freight to

---

1. Actually, plaintiff seeks an order directing payment of $6,691.75 to SCAC Transport (U.S.A.) Inc., and directing payment of the balance of the escrow account to MCT. *See* discussion, *infra.*

which an owner's lien might attach once paid to a charterer's agent); *Marine Traders, Inc. v. Seasons Navigation Corp.*, 422 F.2d 804, 806 (2d Cir. 1970) (a shipowner's lien on subfreights is "discharged" by good faith payments by the shipper to the charterer without notice of the shipowner's rights). Plaintiff urges that payment to the charterer or its agents discharges the *shipper* rather than the lien, and asserts that no case has actually held that such a payment discharges the owner's lien in its entirety. MCT contends that its lien persists "for so long as the funds may reasonably be identified". (Plaintiff's Memorandum of Law at 40).

■ While plaintiff's argument is not without considerable appeal, and although we have not found a case precisely on point, we conclude that plaintiff's maritime lien on subfreights persists only for as long as the subfreights remain unpaid by the shippers involved. In our view, a maritime lien has the effect of placing the shipowner in the shoes of a defaulting charterer vis-a-vis third parties who chose to ship cargo aboard the owner's ship. Unpaid freights thus serve to secure payment of the charter hire. Once the freight is paid, the owner, insofar as he stands in the charterer's shoes, is entitled to nothing. He retains, of course, his essentially contractual claim against the charterer, but once that claim is resolved, his standing among the charterers' other creditors should be adjudicated on its merits without regard to the priority and security afforded by a maritime lien. Extending the "reach" of the owner's lien to funds already in the hands of a charterer or its agent would have a more far reaching and less predictable impact on the charterer's other creditors. The owner's priority interest would survive, and in each case, the Court would be required to identify those funds held by the charterers or one or more of its agents which are traceable as subfreights of a particular vessel on a particular voyage. In this particular case, some of the money paid as subfreights has already been identified. Nevertheless, we believe that a clear line must be drawn between paid and unpaid freights because of the limited purpose of a maritime lien, as well as the potential difficulty of identification in other cases.

Plaintiff's motion to compel payment of the funds originally paid to Impact and Peralta as Koh Eun subfreights is denied, insofar as it is based on a claim of maritime lien. Defendant's motions to vacate the arrests are granted.

While it thus appears that plaintiff no longer has a maritime lien on the $81,124.20 deposited in the escrow account by Impact and Peralta, the fate of the $3,353.94 collected from the unidentified Canadian shipper is not as certain. It is not clear from the papers now before us whether that amount was collected while still in the hands of the shipper or its agent, or whether it was already in the hands of an IROSCO agent. Plaintiff's attorney states: "... In February 1979 I collected $3,353.94 in KOH EUN subfreights from a port agent in Canada and these monies were deposited in the interest bearing escrow account ....". (Cohen Aff. p. 7). We assume from statements made at oral argument that these subfreights were collected from the shipper or its agent and that plaintiff's maritime lien on these funds is valid. Plaintiff's motion to compel payment of the $3,353.94 is granted without prejudice to Peralta's or Impact's right to seek reconsideration of this determination upon a showing that this amount was not collected from either the unidentified Canadian shipper or its agent.

■ Plaintiff's application concerning payment to SCAC is denied. SCAC is not a party to these proceedings, and plaintiff, without a maritime lien on the funds in escrow, other than the $3,353.94 discussed above, is not in a position to direct payment of those funds to a third party.

### B. *Attachment Issues*

In view of our resolution of the maritime lien question, we turn next to plaintiff's "conditional cross–motion" for an order, as of December 13, 1977, attaching the $81,124.20 held in the escrow account as Koh

Eun subfreights, and to Impact's motion to vacate Judge Ward's order attaching the $21,625.00 seized from its Chemical Bank accounts. For the reasons stated herein, plaintiff's motion is granted pursuant to F.R.Civ.P. 64 and N.Y.C.P.R. 6201(1) (McKinney 1980), and Impact's motion is denied. Plaintiff's motion for an order directing payment to it of the balance ($102,749.20) of the escrow account is continued for thirty days from the date of this opinion to allow Peralta or any other claimant to the funds in escrow to make an appropriate motion before this Court pursuant to N.Y.C. P.L.R. § 6221 (McKinney 1980). Enforcement of plaintiff's judgment against these funds is stayed during the same period.

█ F.R.Civ.P. 64 provides in pertinent part that, while federal statutes govern to the extent they are applicable, "all remedies providing for seizure of ... property for the purpose of securing satisfaction of ... [a] judgment ultimately to be entered ... are available [as] provided by the law of the state in which the district court is held, existing at the time the remedy is sought ...." Despite a number of vague arguments by defendants Impact and Peralta, neither 9 U.S.C. § 8 (1970) nor Rule B(1), Supplemental Rules for Certain Admiralty and Maritime Claims, (F.R.Civ.P.Supp.), precludes an attachment on state law grounds in this case. Indeed, Rule B(1) provides that a "plaintiff may, pursuant to [F.R.Civ.P.] 4(e), invoke the remedies provided by state law for attachment ... of the defendant's property". We note too that since plaintiff seeks to enforce its New York arbitration award in New York, the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. §§ 201 et seq. (Supp.1980) does not apply. We thus proceed with our analysis of plaintiff's claim for attachment under state law.

█ MCT invokes CPLR § 6201(3), which enables a plaintiff to obtain an attachment where "the defendant, with intent to defraud his creditors or frustrate the enforcement of a judgment that might be rendered in plaintiff's favor, has assigned, disposed of, encumbered or secreted property, or removed it from the state or is about to do" so. While developments in Iran subsequent to the commencement of this proceeding as well as IROSCO's continued defaults herein might well entitle plaintiff to an attachment under § 6201(3) from the time of IROSCO's first default, plaintiff has failed to provide the Court with factual allegations sufficient to serve as a basis for an attachment as of the time the complaint was filed on December 13, 1977. See generally, J. McLaughlin, Practice Commentaries (6201:4) (1980). We need not resolve this question, however, since we conclude that upon a showing that IROSCO is not licensed to do business in New York, plaintiff would have been entitled to an order attaching IROSCO's assets pursuant to CPLR § 6201(1) from the time it filed its complaint, and that it could throughout this litigation have shown the need for a continuing levy. See Reading & Bates Corp. v. National Iranian Oil Co., 478 F.Supp. 724, 726–727 (S.D.N.Y.1979); ' Coastal States Trading, Inc. v. Zenith Navigation, S. A., 446 F.Supp. 330, 342 (S.D.N.Y.1977).

Under CPLR § 6201(1), a plaintiff seeking a money judgment may obtain an attachment where the defendant is a foreign corporation not qualified to do business in the state. Attachment is discretionary with the trial court. Reading & Bates v. National Iranian Oil Corp., 478 F.Supp. at 726, citing Weinstein–Korn–Miller, N.Y.Civil Practice ¶ 6201.03 (1963), and the burden is on plaintiff to establish the grounds for attachment, the need for continuing the levy, and the probability of success on the merits. See N.Y.C.P.L.R. § 6223(b) (McKinney 1980). Judge Ward found and the parties do not dispute that all of the property currently in the escrow account belonged to IROSCO and this Court has no doubt that plaintiff's original complaint made out a prima facie case for breach of charter party against IROSCO. IROSCO, moreover, is an Iranian corporation which, other than the money involved here, apparently has few if any other assets in this state. At the outset of this action, plaintiff thus had a "clear

need" to temporarily hold defendant's assets to ensure satisfaction of a potential judgment, *see Coastal States Trading, Inc. v. Zenith Navigation*, 446 F.Supp. at 342, and IROSCO's repeated failure to appear either .before this Court or the arbitration panel demonstrates that a continuing levy was, and is, needed. *See Reading & Bates v. National Iranian Oil Corp.*, 478 F.Supp. at 727. While plaintiff has failed to establish or even allege that IROSCO is not licensed to do business in New York, obviously because its motion is based on § 6201(3) rather than § 6201(1), there have been no allegations to the contrary. In the face of plaintiff's newly confirmed arbitration award and IROSCO's continued default, plaintiff's motion for an attachment to take effect *"nunc pro tunc* as of December 13, 1977" is granted subject to a showing within thirty days from the date of this opinion that IROSCO is not, in fact, licensed to do business in New York. If IROSCO is licensed to do business in New York, the Court will then decide the issue left open under CPLR § 6201(3). Impact's motion to vacate the existing attachment is denied.

 Although we grant plaintiff's motion for an attachment and are unaware of any formal third party claims to the escrowed funds, there are several reasons why a stay of execution against the fund is appropriate. First, given plaintiff's claim of maritime lien and this Court's conclusion that most of the money in the escrow account in fact stemmed from Koh Eun subfreights, other IROSCO creditors may have concluded that their claims against those funds could not prevail. Second, SCAC may have a claim against the account which it has yet to assert in light of its prior .dealings with Peralta and MCT. (Plaintiff's Memorandum of Law at 11–14). Finally, Peralta will be given an opportunity to formally assert the alleged claims against IROSCO that we concluded are not a bar to certification of our confirmation

order. The Court emphasizes that the stay will not prevent plaintiff from enforcing its judgment against IROSCO assets other than the escrowed funds.

## IV. *The Remaining Motions*

### A. *Peralta's Motion for Summary Judgment*

Since plaintiff conceded at oral argument that it can prove neither fraud nor "conspiracy" against Peralta, Tr. at 29, defendant's motion for summary judgment on counts 4 through 6 of the original complaint is granted without opposition. In its proposed Amended Complaint, plaintiff seeks an accounting from Peralta. We conclude that there is no merit to this request and that leave to amend should not be granted on this basis. As a judgment creditor, plaintiff will have available to it the procedures for effectuating a judgment provided by F.R.Civ.P. 69.

### B. *Plaintiff's Motion to Amend the Complaint and Defendants' Motions for Summary Judgment*

 The proposed amended complaint contains four substantive variations from the original pleading:[2] 1) plaintiff's attempt to allege fraud with greater specificity; 2) plaintiff's allegation that the individual defendants were "alter egos" of IROSCO and that Impact was IROSCO's "joint venturer", thereby subjecting the individual defendants to joint and several liability for "the sum of $580,000" and subjecting Impact to liability for $580,000; 3) plaintiff's demand for an accounting from Peralta dealt with above, and 4) plaintiff's demand for $1,000,000 in punitive damages from Impact and all of the individual defendants. Although fraud is still the essence of plaintiff's claim, the complaint in either its original or amended version fails to allege fraud with any degree of particularity. Even after completion of discovery, plaintiff has failed to bolster its conclusory allegations with any documentary or other evidence of fraud. Summary judgment is

---

**2.** We assume from the language of the amended complaint and from the oral argument that the "interference with contract" language in

plaintiff's original complaint is subsumed in its conspiracy and fraud claims.

granted in favor of the Impact and Iranian defendants and the complaint against all defendants other than IROSCO is dismissed.

In July of 1978, defendants' various motions to dismiss and for summary judgment were continued by this Court pending completion of plaintiff's discovery. The amended complaint is the fruit of that discovery. As the transcript of the May 15, 1980 oral argument makes clear, discovery has revealed only that IROSCO was thinly capitalized; that IROSCO's principals were involved in similarly unsuccessful enterprises; that these principals arranged to have their own goods and goods belonging to associates and friends shipped on the Koh Eun; that some of the individual defendants' names appeared on allegedly misleading brochures which, plaintiff's counsel conceded at oral argument, were not relied on by plaintiff, and that IROSCO's travel and entertainment expenses were allegedly excessive. *See* Tr. at 8–28. In the words of plaintiff's counsel:

> "... I think that is about as far as we are going to get on these facts, and I just don't think that it is realistic to anticipate we are going to have very much more, and the question really comes down, I suppose, on a motion for summary judgment which they make, is whether or not I have been able to, on these documents, come up with a prima facie case." *Id.* at 28.

We think that the answer to counsel's question is "no". Paragraph 24 of the proposed amended complaint, which plaintiff explicitly relies on to "allege fraud with greater particularity and accuracy", *id.* at 8, states that:

> "All of the individual defendants conspired with each other to create IROSCO as the illusion of a shipping company which, through Impact, was then fraudulently used to secure the charter of the KOH EUN from plaintiff under false pretenses."

In the absence of any alleged factual basis, neither a conclusory allegation of this sort nor a bland assertion that defendants are "alter egos" or "joint venturers" is suffi-cient to withstand a motion to dismiss. Moreover, the alleged "facts" brought out in plaintiff's moving papers and at oral argument are not sufficient to withstand a motion for summary judgment. Nothing now before the Court suggests that defendants believed their venture would fail; or that they knew IROSCO would be unable to pay the charter hire, and this Court does not treat as probative of such belief the mere fact of thin capitalization or the contemporaneous failure of similar business ventures. Indeed, the fact that some of the defendants shipped their own cargoes on the Koh Eun suggests an expectation of success.

Plaintiff's motion to amend the complaint is denied, and since the motions by the Impact and Iranian defendants for summary judgment are granted, we need not reach the jurisdictional objections raised by some defendants. Courts one and two of the original complaint against IROSCO are dismissed with plaintiff's consent. Tr. at 77.