PER CURIAM:
A trustee in bankruptcy appeals a district court ruling that a shipowner’s charter lien upon subfreights earned by the charterer prevails against the trustee even though the lien was not perfected by filing as required by the California version of the Uniform Commercial Code. We have jurisdiction under 28 U.S.C.A. § 158(d) (West Supp.1985). We affirm.
Placedo Shipping Corporation chartered its ship to the debtor, Pacific Caribbean Shipping, Inc. A standard clause in the form agreement gave Placedo a lien upon subfreights earned by Pacific. Subfreights are money that the charterer of a ship earns by carrying cargo. See G. Gilmore & C. Black, The Law of Admiralty 232 (2d ed. 1975). Pacific then subchartered the vessel to the Metal Transport Corporation.[1] The amount owed to Pacific under the contract, the subfreights in issue, is claimed both by Pacific and by Placedo.
Placedo withdrew the ship from Pacific’s service for nonpayment of its charter obli *1407 gations. Two days later, Pacific filed a chapter 7 bankruptcy petition. Its trustee in bankruptcy sought to set aside Placedo’s interest in the subfreights earned by Pacific by carrying cargo shipped by the Metal Transport Corporation because the interest was not perfected by filing, which the trustee claims was required by the California version of the Uniform Commercial Code. Placedo and the Metal Transport Corporation urge that the Uniform Commercial Code does not apply to this transaction by its terms, and that if it did, it would be invalid bécause it conflicts with federal maritime law.
The bankruptcy court ruled in favor of Placedo, holding that the Uniform Commercial Code did not apply by its terms, and therefore the court did not need to decide whether federal maritime law governed. The trustee appealed to the district court, which affirmed on the basis of the bankruptcy court’s conclusions and findings and permitted the immediate appeal of this matter under Fed.R.Civ.P. 54(b).
The parties agree that a security interest in accounts can be perfected under the Code only by filing. Thus, we must first decide whether subfreights come within the definition of accounts contained in California Commercial Code § 9106 (West Supp. 1986). Only if they do must we then decide whether federal maritime law pre-empts the Code.
Section 9-106 of the U.C.C. (Cal.Comm. Code § 9106) provides that:
“Account” means any right to payment for goods sold or leased or for services rendered which is not evidenced by an instrument or chattel paper, whether or not it has been earned by performance____ All rights to payment . earned or unearned under a charter or other contract involving the use or hire óf a vessel and all rights incident to the charter or contract are accounts.
Subfreights are included within the literal terms of this provision both because they are a right to payment for services rendered, and because they are a right incident to a vessel charter.
Placedo argues that section 9-106 is intended to specify exactly the sort of interest ship charters created, and so to eliminate confusion as to whether they are accounts, chattel paper, or general intangibles. Thus, its argument continues, the Code does not govern the right to sub-freights, but only assignments of charters. The trustee disagrees, arguing that section 9-106 makes it clear that the U.C.C. does apply to maritime liens on subfreights, and that Placedo failed to comply with the provisions of Article 9.
In the leading treatise on maritime law, it is pointed out that maritime liens have extraordinarily little in common with land liens, including consensual security interests. G. Gilmore & C. Black, The Law of Admiralty 586-89 (2d ed. 1975). Land liens and maritime liens are “two unlike things ... called by the same name.” Id. at 589. In particular, it is well-established that maritime liens are secret and unrecorded, that is, they are valid without possession or filing, while Article 9 security interests do require filing or possession. Id. at 586-89. Furthermore, maritime liens generally have priority in reverse chronological order, while Article 9 security interests generally have priority in normal chronological order. Id. Thus, it is most unlikely that the drafters of the U.C.C. intended to create a single statute that would apply in an identical manner to both personal property financing on land and to maritime liens. It is even more unlikely that the drafters would have neglected to mention an intention to entirely rewrite the long-standing filing and priority rules of maritime law. In the comment to U.C.C. § 9-101 (Cal.Comm.Code § 9101) the drafters stated that Article 9 of the U.C.C. was intended to “supercede[] prior legislation dealing with such security devices as chattel mortgages, conditional sales, trust receipts, factor’s liens, and assignments of accounts receivable.” All the devices men *1408 tioned are land-based; maritime liens are not included in the list.
The reference to ship charters in U.C.C. § 9-106 (Cal.Comm.Code § 9106) and the accompanying comment does not, contrary to the trustee’s arguments, evince an intent to alter maritime lav/. These references may quite properly be read as referring to situations where ship charters are used as collateral in transactions that do not create maritime liens. For example, section 9-106 could apply to a shipowner’s use of his rights in a ship charter as collateral in the financing of land-based assets unrelated to the ship.
Accordingly, we conclude that in view of the lack of similarity between Article 9 consensual security interests and maritime liens, and given the absence of a clear statement of intent to regulate maritime liens, the U.C.C. should not be interpreted to apply to such liens, even though a maritime lien arguably falls within the definition of a security interest found in U.C.C. § 1-201(37) (Cal.Comm.Code § 1201(37)). As a result, we hold that Article 9 of the U.C.C. does not conflict with federal law and is not preempted.
Placedo's lien on the subfreights is a maritime lien under federal law. Marine Traders, Inc. v. Seasons Navigation Corp., 422 F.2d 804, 806 (2d Cir.1970); Gilmore & Black, supra, at 631 & n. 103; G. Robinson, Handbook of Admiralty Law 401-04, 635-37 (1939). Thus, Article 9 does not apply. The bankruptcy and district courts were correct in concluding that Pla-cedo was not required to file under Article 9 in order to prevail over the trustee. Accordingly, the judgment of the district court is affirmed.

. The Metal Transport Corporation was permitted to argue the issue in the bankruptcy court, but was not a party to the order from which Pacific appealed. We treat it as an amicus curiae.