**TORO SHIPPING CORPORATION,**
Appellant,

v.

**BACON-McMILLAN VENEER MANU-FACTURING COMPANY et al.,**
Appellees.

No. 22504.

United States Court of Appeals
Fifth Circuit.

Aug. 16, 1966.

Thomas A. Hamilton, Mobile, Ala., Hamilton, Denniston, Butler & Riddick, Thomas A. Hamilton, Mobile, Ala., for appellant.

Alex F. Lankford, III, Mobile, Ala., Hand, Arendall, Bedsole, Greaves & Johnston, Mobile, Ala., of counsel, for appellees.

Before JONES and GEWIN, Circuit Judges, and HUNTER, District Judge.

HUNTER, District Judge:

Appellant, Toro Shipping Corporation (a Panamanian corporation), chartered one of its ships (S. S. NADINE) to Maderas Y. Triplex (a Colombian corporation), for use in shipping logs between Colombia, South America and Gulf Coast ports of the United States. The time charter was signed in March of 1964. In early December of 1964, appellee entered into negotiations with Triplex for the purchase of the Cativo logs which were seized in this action.[1] On January 25, 1965, appellee's need for these logs became pressing and one of its officers telephoned Triplex and arranged for an immediate shipment in return for payment in advance and a promise to pay demurrage if the existing longshoremen's strike made unloading impossible. On the same day appellee sent its check to Triplex's bank in New York in the amount of $38,000, the price of the logs, including the cost of shipping.

Triplex's dealings with Toro were not marked by such a degree of trust and confidence—rather, suspicion and doubt qualified their relationship. The char-

1. In late November of 1964 the NADINE had delivered at Mobile a cargo of logs which Bacon-McMillan Veneer Manufacturing Company, appellee, had purchased from Triplex. The bills of lading covering that cargo contained no reference to any charter party.

ter under which Triplex was using the NADINE contained a provision that the "owners shall have a lien upon all cargoes, and all subfreights for any amounts due under this charter." Appellant, through its Captain Moisidies, knew of charter party trouble brewing with Triplex as early as January 15th, and he was dispatched to South America to consult with the Master of the NADINE, Captain Rousso, concerning delinquent charter hire and other alleged defaults. The two captains conferred on January 26th and Rousso was instructed to insert in all bills of lading a clause making them subject to the charter.. On January 28th, the NADINE arrived at the Port of Turbo in Northern Colombia. The loading of the logs commenced on that day. It was not until the morning of January 31st—and after the cargo was aboard the vessel—that Captain Rousso informed the stevedoring company (hired by Triplex to load the ship) that he would refuse to sign the bills of lading unless they contained a notation expressly incorporating into them the terms of the charter. When these representatives of Triplex refused to accede to this demand, the Master declined to sail and the ship remained in the harbor a full extra day while the various spokesmen argued over the documents. On February 1st a notation was inserted in the bills of lading incorporating the terms of the charter party,[2] and the NADINE departed for Mobile.

During all this time, appellee was totally unaware of the difficulties and rea-

sons for the delay in Colombia. On February 1st Captain Rousso wired Tricontinental, Toro's representative in New York, that the receiver of the cargo in the United States would be Bacon-McMillan. Tricontinental, on February 5th, wired Bacon-McMillan that Toro would assert a lien on the cargo when the ship docked. This was the first knowledge that Bacon-McMillan had of the vessel owner's claim and the first inkling that instead of procuring a swift and easy delivery of logs, they had bought a law suit.

When the NADINE arrived at Mobile, Toro instituted its libel. The District Court found that Bacon-McMillan (the consignee-purchaser-appellee) had paid the full price of the cargo and freight in good faith before it had any knowledge of the lien claimed by appellant and was thereby entitled to take the logs free and clear of the lien. Toro appealed.

Chief among Toro's arguments in this court is its assertion that where the terms of the charter party are expressly incorporated into bills of lading, they are a part of the contract of carriage and are binding upon the ultimate consignee just as they would be if the dispute were between the charterer and the shipowner. In support of this broad statement of law, great reliance is placed on Son Shipping Co. v. DeFosse and Tanghe, D.C., 96 F.Supp. 595, reversed 199 F.2d 687 (2nd Cir., 1952). Appellant's reliance is misplaced. In Son, the charter party contained an agreement to arbitrate all disputes. The terms of the charter party were expressly incorporated into the bills

2. The facts and circumstances surrounding the issuance of the bills of lading are confused and opaque. The District Court refused to admit into evidence what purported to be copies of bills of lading (L-1), unless the originals could be accounted for. The record fails to disclose any further effort to get L-1 admitted into evidence. Nonetheless, it is obvious from appellant's brief that he considers L-1 to be in evidence. With respect to that portion of the bills of lading purporting to incorporate the terms of the charter party, Capt. Rousso testified that the reason the vessel delayed sailing from the time it was completely loaded until the afternoon of February 1st was be-

cause the charterer, Triplex, had refused to put such a notation in the bills of lading and he (Rousso) refused to sign same. To say the least, the evidence is in conflict as to who inserted this notation. At one time, Capt. Rousso testified it was Mr. Moreno (a representative of the stevedoring company) who handed the bills of lading to him on February 1st. However, on two other occasions, Capt. Rousso testified that it was he who made the insertion in the bills of lading. The fair purport of the evidence is in conflict as to whether the bills of lading were ever even accepted by any representative of Triplex.

of lading,[3] which were received by the purchaser. While the vessel was proceeding to its destination, the original purchaser delivered to Palestine Electric the same bills of lading and sold the full cargo of oil to that corporation. Obviously, Palestine made their payment on the basis of these bills of lading. Subsequently they made a claim against the charterer for short delivery. Charterer then notified the vessel owner of its desire to arbitrate, as provided in the charter. The owner sought injunctive relief, asserting that the dispute was not subject to arbitration. The litigants were the shipowner and the charterer, the latter being joined by Palestine. The principal problem presented was whether or not the language used in the bills of lading was sufficient to incorporate the arbitration clause into the bills. The District Court decided that the language was insufficient. The Court of Appeals reversed, holding that the owner and charterer had agreed in clear and unmistakable language to incorporate the arbitration clause. The full purport of the evidence in the action now before us is in conflict as to whether the bills of lading were ever accepted by any representative of the charterer. But, above and beyond this, Son differs in a vital respect from the instant case. There, the ultimate consignee accepted and paid for the cargo against bills of lading which clearly noted the existence of the charter party and its incorporation in the bills. Here, Bacon-McMillan paid for the Cativo logs in good faith dealing with the charterer as if it were the owner of the vessel, and without any knowledge or notice of shipowner's claim or of the fact that the bills of lading included a notation incorporating the terms of the charter party. Here, it is undisputed that the bills of lading with the charter party notation, were not issued until February 1, 1965, after all

cargo had been placed aboard the vessel, and several days after the appellee had paid for the same in full, pursuant to a still prior agreement all without any notice of any right of appellant.

█ A review of the jurisprudence suggests, in essence, this broad equitable premise: The shipowner has a maritime lien for charter hire on cargo where a lien is reserved initially in the original charter and expressly incorporated into the bills of lading *except* as against a good faith purchaser of the cargo who had paid for it in advance without notice of the shipowner's rights.[4]

█ We need not and do not necessarily approve all the language of the decisions cited in support of this proposition. Nevertheless, after careful analysis, it is our view that the foregoing statement clearly and correctly enunciates the law. Viewed in this perspective the issue quickly narrows: Did appellee pay for the logs in advance and in good faith, and without knowledge (actual or constructive) of the shipowner's claim? Under the circumstances of this case it makes little difference as to when technical title to the logs passed to appellee. The District Court found that the payments were made in good faith and without knowledge or notice of the shipowner's claim. This conclusion was imminently correct. In fact, this is not a case in which the record is equivocal. To the contrary, it is undisputed that the bills of lading, with a charter party notation, were not issued until February 1, 1965, after all cargo had been placed aboard the vessel and several days after the appellee had paid for same in full, pursuant to a still prior agreement—all without any notice of even a charter.

For the foregoing reasons, the judgment of the District Court is affirmed.

3. There was one exception, which is of no relevance here.

4. Hall Corp. of Canada v. Cargo Ex Steamer Mont Louis, etc., 62 F.2d 603 (2nd Cir., 1933); Larsen v. 150 Bales of Sisal Grass, 147 F. 783 (S.D.Ala.); American Steel Barge Co. v. Chesapeake & Ohio Coal Agency Co., 115 F. 669 (1st Cir.); Actieselskabet, etc. v. Harrison & Co., Inc., 260 F. 287 (D.C.N.Y., 1918); THE ALBERT DUMOIS, 54 F. 529 (D.C.N.Y., 1893); Poor on Charter Parties and Ocean Bills of Lading, 4th Ed., pp. 65–68.

JONES, Circuit Judge (dissenting):

The shipping contract of cargo is the bill of lading. The bill of lading incorporated the charter party which gave a lien to the owner. This being true, the owner was entitled, I think, to the benefit of the lien for which it had contracted. Therefore, I

Dissent.