REVISED JANUARY 19, 2005

United States Court of Appeals
Fifth Circuit

**F I L E D**

**December 8, 2004**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 03-30598
_____

CHEMBULK TRADING LLC
             Plaintiff - Appellee

v.

CHEMEX LTD
             Defendant

_____

NOVOROSSIYSK SHIPPING COMPANY
             Plaintiff - Appellant

v.

CHEMEX LTD, Etc
             Defendant

_____

Appeal from the United States District Court
for the Eastern District of Louisiana

_____

Before KING, Chief Judge, SMITH and EMILIO M. GARZA, Circuit
Judges.

KING, Chief Judge:

The district court granted Defendant-Appellee Chembulk's

motion for summary judgment, and Plaintiff-Appellant Novorossiysk

appeals.  For the following reasons, we REVERSE.

## I. BACKGROUND

On May 30, 2001, Novorossiysk Shipping Co. (Novorossiysk)

entered into a time-charter party[1] with Chemex Ltd. (Chemex) to charter its ship, the M/V Tuapse, to Chemex. The time-charter party granted Novorossiysk a lien on "all cargoes and all freights for any amounts due under this charter." On August 29, 2002, Chemex entered into a voyage-charter party[2] with Westway Trading Co. (Westway) to subcharter the M/V Tuapse to Westway. In return, Westway was to pay Chemex freight, ten percent of which was payable at the end of the voyage. In a separate transaction on August 29, Chembulk Trading, Inc. (Chembulk) voyage-chartered the M/V Chembulk Clipper to Chemex. Chemex failed to pay both the full amount of hire and demurrage ($500,000) it owed Novorossiysk and the freight ($147,000.01) and demurrage ($36,449.65) it owed Chembulk.

On October 1, 2002, Novorossiysk faxed a notice to Westway stating that it was exercising its right to a lien on "all

---

[1] A "time-charter" is a contract to hire a ship for a fixed period of time under which the shipowner or charterer is compensated with hire. The quantity of cargo carried is usually irrelevant to the hire paid to the shipowner. Atl. Richfield Co. v. Good Hope Refineries, Inc., 604 F.2d 865, 871 (5th Cir. 1979); GRANT GILMORE & CHARLES L. BLACK, JR., THE LAW OF ADMIRALTY § 4-1 (2d ed. 1975) [hereinafter GILMORE & BLACK]. Generally, a charter party is a contract for the use of a ship that belongs to another. GILMORE & BLACK, § 4-1.

[2] A "voyage charter" is a contract to hire a ship for a specific voyage or voyages under which the shipowner or charterer is compensated with freight. See Gulfgate Marine Transp. Co. v. Dampskibsselskabet Svendborg, 10 F.3d 1190, 1192 n.3 (5th Cir. 1994); Atl. Richfield Co., 604 F.2d at 871. The amount of freight paid is generally dependant on the amount of cargo actually loaded onto the vessel. Id.; GILMORE & BLACK, § 4-9.

freight and sub-freights" pursuant to the Novorossiysk-Chemex time-charter party. Novorossiysk requested that Westway remit the remaining ten-percent balance of freight (the "Westway Freight"), which Westway had not yet paid to Chemex, directly to Novorossiysk. On October 2, 2002, Chembulk sought a Writ of Maritime Attachment and Garnishment against the Westway Freight pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims. On October 4, 2002, Novorossiysk also sought a Writ of Maritime Attachment and Garnishment against the Westway Freight.

Both the Chembulk and Novorossiysk attachment suits were consolidated. Westway then filed a complaint for interpleader, whereupon the district court consolidated all three suits. The district court granted Westway leave to deposit $31,533.55 (the full amount of the Westway Freight) into the court's registry, discharged it from the lawsuit, and relieved it of all claims regarding that amount.

On January 21, 2003, Chembulk moved to stay the consolidated proceedings pending arbitration of its claim against Chemex in accordance with an arbitration clause in the Chembulk-Chemex voyage charter. Novorossiysk opposed Chembulk's motion and cross-motioned for summary judgment, alleging that its lien-claimant status gave it priority over Chembulk's Rule B attachment. In response, Chembulk also moved for summary judgment, arguing that Novorossiysk did not have a maritime lien

3

but was merely a Rule B claimant whose claim was preempted by Chembulk's earlier Rule B attachment. Further, Chembulk argued that even if Novorossiysk did have a lien, it could not assert priority in an in personam Rule B attachment proceeding since maritime liens can only be asserted in in rem proceedings. Subsequently, the district court granted Novorossiysk leave to amend its complaint to add an in rem claim to the Westway Freight under Rule C of the Supplemental Rules for Certain Admiralty and Maritime Claims.

On February 18, 2003, Chemex (and its managing agent, Brookwater) relinquished all rights to the Westway Freight. Based on that, the district court dismissed as moot Chembulk's motion to stay pending arbitration. Therefore, the sole issue before the court was whether Novorossiysk or Chembulk was entitled to the Westway Freight--i.e., whether Novorossiysk had a maritime lien on the Westway Freight giving it priority over Chembulk's Rule B attachment. On March 31, 2003, the district court initially denied both parties' motions for summary judgment so that Chembulk could respond to Novorossiysk's in rem claim. However, the parties asked the court to decide the motion on the existing record.

On May 27, 2003, the district court granted Chembulk's motion for summary judgment. The district court found as a matter of law that the Westway Freight was properly characterized as "subfreights" rather than "freights" because it represented

4

the amount that "Westway (a third party payor/subcharterer of the M/V TUAPSE) agreed to pay Chemex for the shipment of cargo." Chembulk Trading L.L.C. v. Chemex Ltd., 2003 AMC 1441, 1445 (E.D. La. 2003). Consequently, the district court concluded that the Novorossiysk-Chemex time-charter party did not give Novorossiysk a maritime lien over the Westway Freight because it provided a lien on "all freights" and not "subfreights." The district court thus treated the case as that of two competing Rule B attachments and, accordingly, held that Chembulk had priority since it was the first to attach the Westway Freight.

On June 11, 2003, the district court stayed the disbursement of the Westway Freight pending appeal. The issue before us on appeal is whether the language in the Novorossiysk-Chemex time charter provided Novorossiysk with a valid maritime lien over the Westway Freight defeating Chembulk's Rule B attachment.

## II. DISCUSSION

### A. Introduction

The district court's holding would certainly encourage precision in drafting charter parties. Indeed, had the charter at hand specifically used the term "subfreights," this whole litigation could have been avoided. However, while the district court's reasoning seems logical, in the absence of any meaningful evidence that the terms "freights" and "subfreights" are legally, or by custom and usage, mutually exclusive, we are bound by

5

principles of contract interpretation under federal maritime law.
We therefore hold that the district court's interpretation of the
"all freights" language in the Novorossiysk-Chemex time charter
was erroneous as a matter of law.

**B.    Standard of Review**

We review the district court's grant of summary judgment de
novo, applying the same standards used by the district court.
Vulcan Materials Co. v. City of Tehuacana, 369 F.3d 882, 886 (5th
Cir. 2004).  Summary judgment is proper when there is no genuine
issue of material fact and the moving party is entitled to
judgment as a matter of law.  FED. R. CIV. P. 56(c); Vulcan
Materials Co., 369 F.3d at 886.

We also review the district court's legal conclusions de
novo.  Triad Elec. & Controls, Inc. v. Power Sys. Eng'g, Inc.,
117 F.3d 180, 186 (5th Cir. 1997).  The interpretation of an
unambiguous contract[3] presents a question of law, and thus, it is
subject to our de novo review.  Id. at 186; Exxon Corp. v.
Crosby-Mississippi Res., Ltd., 40 F.3d 1474, 1481 (5th Cir. 1995)
(per curiam).  Therefore, we review the district court's
interpretation of the "all freights" language in the

---

[3]    Chembulk asserts, and Novorossiysk does not dispute, that
the Novorossiysk-Chemex time charter is unambiguous.  The fact that
Novorossiysk and Chembulk dispute the meaning of the term "all
freights" does not by itself make the charter ambiguous.  See
Broad v. Rockwell Int'l Corp., 642 F.2d 929, 948, 955 (5th Cir.
1981) (en banc) (concluding that the district court correctly
interpreted an indenture as unambiguous even though the parties
disputed the construction of its terms).

Novorossiysk-Chemex time charter de novo.

## C. Analysis

Under general principles of maritime law, claimants with maritime liens are entitled to preference and priority over attaching creditors. Triton Container Int'l, Ltd v. Baltic Shipping Co., 1995 AMC 2963, 2965-67 (E.D. La. 1995). As between two Rule B attaching creditors, however, the first to attach has priority. Id. at 2969. Therefore, as the district court noted, if Novorossiysk has a valid maritime lien over the Westway Freight, its claim takes priority over Chembulk's Rule B attachment. If Novorossiysk does not have a lien, then Chembulk's claim takes priority because Chembulk was the first attaching creditor.

Shipowners, as a general rule, have a lien upon the cargo owned by the charterer for compensation not yet paid. See Bird of Paradise, 72 U.S. 545, 554 (1866); Arochem Corp. v. Wilomi, Inc., 962 F.2d 496, 499 (5th Cir. 1992). Accordingly, Novorossiysk would traditionally have a lien on any cargo owned by Chemex for any hire or demurrage Chemex owed to Novorossiysk. In contrast, when the cargo is not owned by the charterer, a shipowner generally does not have a lien on the cargo. See Finora Co., Inc v. Amitie Shipping, Ltd., 54 F.3d 209, 213 (4th Cir. 1995). The charter between the shipowner and the charterer, however, may provide for a lien on any freights owed by the cargo

7

owner to the charterer.  Id.  Indeed, "[t]wo general conditions are necessary for a shipowner to maintain a lien against such a third person.  First, the shipowner must have a contractual right to assert the lien; second, the shipowner must properly perfect the lien."  Biehl & Co., Inc. v. Apollonia Holding, Inc., 693 F. Supp. 457, 465 (E.D. La. 1988); accord Toro Shipping Corp. v. Bacon-McMillan Veneer Mfg. Co., 364 F.2d 928, 930 (5th Cir. 1966).  Novorossiysk states, and Chembulk does not dispute, that Novorossiysk perfected whatever lien rights it had by faxing notice of its lien to Westway on October 1, 2002.[4]  We therefore turn to whether Novorossiysk had a contractual right to assert a lien against the Westway Freight.

A shipowner's contractual right to assert a lien against freight owed by a third party arises by an express provision in the charter party granting the shipowner a lien on such freight. Marine Traders, Inc. v. Seasons Navigation Corp., 422 F.2d 804, 806 (2d Cir. 1970).  The lien provision, as it appears in most form charters, is usually phrased as: "the owners [meaning the owners of the vessel] shall have a lien upon all cargoes and all

---

[4]    At oral argument, Chembulk asserted that it argued in its brief that Novorossiysk did not meet the notice element.  However, in its brief, Chembulk only disputed the notice requirement as to Novorossiysk's lien-on-cargo argument, not Novorossiysk's lien-on-subfreights argument.  Specifically, Chembulk argued in its brief that the letter Novorossiysk sent to Westway did not give notice because it did not assert a lien on cargo, but only on "freights" and "subfreights."  Accordingly, the parties are not in dispute as to the notice required to assert a lien on subfreight.

8

<u>subfreight</u> for charter money due under this charter." <u>Am. Steel Barge Co. v. Chesapeake & O. Coal Agency Co.</u>, 115 F. 669, 671 (1st Cir. 1902) (emphasis added) (alteration in original); <u>see also</u> <u>United States v. Freights, Etc., of S.S. Mount Shasta</u>, 274 U.S. 466, 469 (1927); <u>Toro Shipping Corp.</u>, 364 F.2d at 929; <u>Cornish Shipping Ltd. v. Int'l Nederlanden Bank N.V.</u>, 53 F.3d 499, 500 (2d Cir. 1995). On the other hand, the lien clause in the Novorossiysk-Chemex time charter provides that "[o]wners shall have a lien upon all cargoes and <u>all freights</u> for any amounts due under this charter." (emphasis added). The issue before us is one of contractual interpretation--whether the term "all freights" is sufficiently explicit to grant a contractual right to assert a lien over freight owed by a third party (i.e., subfreight), specifically, the Westway Freight.

A basic principle of contract interpretation in admiralty law is to interpret, to the extent possible, all the terms in a contract without rendering any of them meaningless or superfluous. <u>Foster Wheeler Energy Corp. v. An Ning Jiang MV</u>, 03-30038, 2004 WL 1905297, at *3 (5th Cir. Sept. 13, 2004); <u>Capozziello v. Brasileiro</u>, 443 F.2d 1155, 1159 (2d Cir. 1971). Freight is the compensation paid under a voyage charter for the use of a ship to carry goods. <u>Kimball</u>, 70 U.S. at 44-45. Hence, we could construe "all freights" to provide a lien on the compensation Novorossiysk was being paid for chartering its ship to Chemex. This interpretation, however, would basically give

9

Novorossiysk a lien on the compensation it was owed--effectively securing the debt with the debt itself. Interpreting the term "all freights" in this way, therefore, would render it meaningless and superfluous because it is useless to assert a security interest in the very debt owed.[5] Unless there is no alternative, a clause should not be interpreted such that it is rendered meaningless. <u>Capozziello</u>, 443 F.2d at 1159.[6]

The alternative, and more viable interpretation, is that the term "all freights" provides Novorossiysk with a lien on the compensation Chemex was being paid to ship Westway's goods--the Westway Freight. This interpretation has the virtue of not rendering the term "all freights" meaningless or superfluous and

---

[5] Moreover, as discussed above, under the terms of the Novorossiysk-Chemex time-charter party, Novorossiysk earned "hire," not "freight." Thus, the term "all freights," in the context of this particular time charter, would not normally be construed to refer to the compensation Novorossiysk was to receive thereunder.

[6] Chembulk argues that the Novorossiysk-Chemex time charter should be construed against Novorossiysk, and thus since Novorossiysk did not include the term "subfreights," it should not have a lien on the Westway Freight. That argument, however, is unavailing. A contract is construed against the drafting party only when it is ambiguous. <u>See</u> <u>Empire Fire & Marine Ins. Co. v. Brantley Trucking, Inc.</u>, 220 F.3d 679, 681 (5th Cir. 2000). The Novorossiysk-Chemex time charter, however, is not ambiguous because its language as a whole is clear, explicit, and leads to no absurd consequences, and as such it can be given only one reasonable interpretation. <u>See</u> <u>Mobil Exploration & Producing v. A-Z/Grant Int'l Co.</u>, 1993 AMC 1137 (E.D. La. 1992) (citing <u>Nat'l Union Fire Ins. Co. v. Circle, Inc.</u>, 915 F.2d 986, 989 (5th Cir. 1990) (per curiam)). Therefore, we do not construe the time charter against Novorossiysk.

is consistent with the definition of "freight."[7]

Moreover, the definition of "subfreights" leads us to the conclusion that the phrase "all freights" could properly include "subfreights." "Subfreights" has been defined in many different ways, but essentially it is the compensation paid to someone other than a shipowner for the carriage of goods or the hire of a ship. <u>Cornish Shipping Ltd.</u>, 53 F.3d at 500 n.1 (defining "subfreights" as "amounts that third-party payors . . . contract to pay directly to the <u>charterer</u> for the hire of the ship or the transport of goods" (emphasis added)); <u>Am. Steel Barge Co.</u>, 115 F. at 672 ("'subfreights' . . . embraces all freights which a <u>charterer</u> stipulates to receive for the carriage of goods" (emphasis added)); ERIC SULLIVAN, MARINE ENCYCLOPAEDIC DICTIONARY 413 (2d ed. 1988) [hereinafter SULLIVAN] ("[f]reight payable by the sub-contractor, normally to the <u>charterer</u>" (emphasis added)). Thus, the person paying the compensation (or subfreight) is not a party to the shipowner-charterer transaction but is, rather, a party to a subsequent transaction with the charterer. Nevertheless, both freight and subfreight are the compensation earned for the carriage of goods, and the only difference between

---

[7] Chembulk argues that the clause is not meaningless because it was included to secure a lien on cargo <u>for</u> freight. However, the language in the time charter makes clear that the clause attempts to provide a lien on "all cargoes <u>and</u> all freights <u>for</u> any amounts due under this charter." (emphasis added). Thus, as this particular clause is structured and worded, it explicitly provides a lien on all freights payable, not simply a lien on the cargo for the freight owed.

the two is that freight is a more general term describing compensation payable, whereas subfreight is compensation payable to someone other than the shipowner.  See Toro Shipping Corp., 364 F.2d at 929; Am. Steel Barge Co., 115 F. at 672; Cornish Shipping Ltd., 53 F.3d at 500 n.1; SULLIVAN, at 413.

We acknowledge that the term "subfreights" is commonly used in charters to provide a lien over freights owed by a third party (subfreight).  See generally Freights, Etc., of S.S. Mount Shasta, 274 U.S. at 469; Toro Shipping Corp., 364 F.2d at 929; Cornish Shipping Ltd., 53 F.3d at 500 (analyzing charters containing the term "subfreights").  We also recognize that many courts use the term "subfreights" when referring to amounts owed by a third party to a charterer.  See Freights, Etc., of S.S. Mount Shasta, 274 U.S. at 466; Toro Shipping Corp., 364 F.2d at 928; Cornish Shipping Ltd., 53 F.3d at 499.  It does not follow, however, that the term "subfreight" is, by custom and usage, the only way to refer to compensation owed by a third party to a charterer.

In addition to the charter at hand, there are other charters which use the term "all freights" in their lien clauses.  See 2C BENEDICT ON ADMIRALTY 17-66.10, 17-80.15 (7th ed., rev. 1974) (displaying the Gastime and Intertanktime 80 form time charters, both of which provide a lien upon cargoes "and all freights for any amounts due under this Charter").  Moreover, many courts, in this circuit and others, have regularly used the terms "freight"

12

and "subfreight" interchangeably. Toro Shipping Corp., 364 F.2d at 929 ("[t]he District Court found that [the third party] had paid the full price of the cargo and freight") (emphasis added)); see also Cornish Shipping Ltd., 53 F.3d at 502 ("the shipowner[] gave notice to . . . the consignee[] that it was exercising its lien before [the consignee] took the final steps necessary to authorize payment of 'freight' charges to . . . the charterer[]." (emphasis added)); Tarstar Shipping Co. v. Century Shipline, Ltd., 597 F.2d 837, 838 (2d Cir. 1979) ("the charter party provided '(t)hat the Owners shall have a lien upon all cargoes, and all subfreights for any amounts due under this Charter . . . .' [The charterer] defaulted on the second hire payment . . . . This event triggered [the shipowner's] attempt to enforce its contractual lien on the freights" (first and second alterations in original) (emphasis added)); Union Industrielle Et Maritime v. Nimpex Int'l, Inc., 459 F.2d 926, 930 (7th Cir. 1972) ("[p]ayment by [sub-charterer] to [charterer] before the lien arose, extinguished all claims by [shipowner] to any freights related to this cargo." (emphasis added)). Even the Supreme Court has used the terms "freights" and "subfreights" interchangeably. Freights of S.S. Mount Shasta, 274 U.S. at 470-71 ("[I]f it be conceded that the Admiralty Court has jurisdiction to enforce a lien on sub-freights by a proceeding in rem . . . we do not perceive how the Court can be deprived of jurisdiction merely by an answer denying that such freights are due."). Therefore, we conclude

13

that the term "subfreights" has not become, by custom and usage, the only way to refer to compensation payable by a third party to a charterer.[8]

We therefore hold, as a matter of interpretation of the Novorossiysk-Chemex time-charter party, that a lien on "all freights" is sufficiently explicit to provide a lien on subfreights. That interpretation of the charter party is compelled by the fact that it provides the only way to give meaning to the term "all freights" in the charter party. Accordingly, Novorossiysk has a valid maritime lien over the Westway Freight pursuant to the "all freights" language in the Novorossiysk-Chemex time charter. Novorossiysk's lien therefore takes priority over Chembulk's Rule B attachment.[9]

### III. Conclusion

We therefore REVERSE the judgment of the district court denying Novorossiysk's motion for summary judgment and granting Chembulk's motion for summary judgment, and we REMAND for further proceedings not inconsistent with this opinion.

---

[8] The term "freight" has many meanings depending on the context in which it is used: "[t]he word freight, when not used in a sense to imply the burden or loading of the ship, or the cargo which she has on board, is the hire agreed upon between the owner or master for the carriage of goods from one port or place to another." Brittan v. Barnaby, 62 U.S. 527, 533 (1858).

[9] Novorossiysk also argued on appeal that it had a lien on the cargo for the Westway Freight pursuant to the "all cargoes" language in the Novorossiysk-Chemex time charter. We do not consider this argument, however, since we find in favor of Novorossiysk based on the "all freights" language.

14

ENDRECORD

GARZA, Circuit Judge, dissenting:

The majority opinion holds that the term "all freights" must be construed to include "subfreights" based on the "the principles of contract interpretation under federal maritime law."

However, in doing so, the majority violates the basic "canon of contractual interpretation that requires words and phrases in a contract to be given their plain meanings." *Cleere Drilling Co. v. Dominion Exploration & Production, Inc.*351 F.3d 642 (5th Cir. 2003). There is no dispute that the terms freight and subfreights have very specific and distinct meanings in the context of admiralty contracts. Indeed, the majority acknowledges this distinction finding that "the term 'subfreights' is commonly used in charters to provide a lien over freights owed by a third-party."

Nevertheless, the majority seeks to expand the definition, and ultimately redefine, the term "all freights" so that the term is not rendered superfluous. In the process, the majority is rejecting established caselaw from other circuits spanning the past century. *See Cornish Shipping Ltd. v. Int'l Nederlanden Bank N.V.*, 53 F.3d 499, 502 (2d Cir.1995) (citing *Marine Traders, Inc. v. Seasons Navigation Corp.*, 422 F.2d 804, 806 (2d Cir.1970) ("To secure payments of freight due from a charterer of its ship, a shipowner may create, *by express provision* in the charter party, a lien on the subfreights earned by the vessel.")

(emphasis added); and *Am. Steel Barge Co. v. Chesapeake & O. Coal Agency Co.*, 115 F. 669, 672 (1st Cir. 1902) ("it cannot reasonably be questioned that 'subfreights,' which is an expression in common use and easily understood, embraces all freights which a charterer stipulates to receive for the carriage of goods."). The majority also ignores the fundamental rule of contract interpretation that requires us to look to the intent of the parties "at the time of entering into the contract regardless of any events occurring afterward." 17 AM JUR. 2D *Contracts* § 345 (2004). Here, the majority has determined that the term "all freights" in fact refers to the freight promised under the charter between Westway and Chemex. However, there is no evidence in the record that the Westway charter existed or was even contemplated of at the time Novorossiysk entered into its charter with Chemex. Unless Novorossiysk had knowledge of this future charter, I find it difficult to see how the majority's decision can be a "more viable interpretation" of the contract.

This is a case involving a simple contractual error for which there is no judicial recourse. Novorossiysk was well aware at the time it entered into the charter with Chemex of the clear distinction between freights and subfreights. If it wanted to exercise a lien over the freight promised by Westway, Novorossiysk could (and arguably should) have expressly stated so in its contract. For whatever reason, it chose not to avail

17

itself of this opportunity and, instead of taking responsibility for its clear error, has sought savior through judicial intervention.  Indeed,  it is disingenuous for Novorossiysk to argue that the term "all freights" is broad enough to include "subfreights" when it specifically stated in its notice to Westway that it was exercising its right to a lien on "all freight and sub-freights."  Clearly, if Novorossiysk truly believed that the term "all freights" was broad enough to include "subfreights", it would not have felt compelled to specify in its notice of its lien on the subfreight owed by Westway.

The majority agrees that the district court's holding would encourage "precision in drafting charter parties" but then subsequently rejects this contention with its holding.  I believe, however, such diligence is not an unreasonable expectation.  To rule otherwise would encourage parties to draft their contracts riddled with errors with the knowledge that the court will step in and correct any problems that ensue as result of sloppy drafting.  Unfortunately, it is not the responsibility of the courts to save parties from their mistakes and any indication otherwise should be clearly avoided.  Accordingly, I respectfully DISSENT.