# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

April 3, 2019

Lyle W. Cayce
Clerk

No. 18-30562

BP EXPLORATION & PRODUCTION, INCORPORATED; BP AMERICA PRODUCTION COMPANY; BP, P.L.C.,

> Requesting Parties - Appellants

v.

CLAIMANT ID 100195328,

> Objecting Party - Appellee

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:18-CV-3215

Before STEWART, Chief Judge, SOUTHWICK and ENGELHARDT, Circuit Judges.

PER CURIAM:*

The claimant in this *Deepwater Horizon* settlement program appeal operates a motor vehicle dealership. The Claims Administrator awarded a substantial sum on the claim. BP appealed, arguing it was a misapplication of the settlement to remove from the relevant calculations of lost profits the

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 18-30562

revenue allocable to related-party transactions but not the expenses. The Appeal Panel declined to make any adjustment, and the district court denied discretionary review. BP appeals from that denial. We conclude that the Appeal Panel misapplied the Settlement Agreement in a manner that required the district court to accept review. We REMAND to the district court.

FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of the Settlement Agreement negotiated between BP and class action representatives in response to the catastrophic discharge of oil after BP's *Deepwater Horizon* offshore drilling rig exploded and sank in 2010. The Settlement Agreement permits individuals and entities that experienced economic and property damage from that disaster to recover from BP through a Court Supervised Settlement Program ("Settlement Program"). Business Economic Loss claims are calculated under the Settlement Agreement by comparing the "actual profit of a business during a defined post-spill period in 2010 to the profit that the claimant might have expected to earn in the comparable post-spill period of 2010."

There are several steps used to calculate a claimant's total award under the Settlement Agreement. This appeal focuses on the calculation of "Step 1 Compensation." That compensation reflects the reduction in a claimant's profit between a period selected by the claimant that post-dates the *Deepwater Horizon* discharge of oil into the Gulf of Mexico, called "the 2010 Compensation Period," and comparable months of the "Benchmark Period" prior to the discharge. Step 1 Compensation is a calculation of any reduction in Variable Profit from the earlier period to the later one. Variable Profit is the sum of the monthly revenue over the relevant period minus "the corresponding variable expenses from revenue over the same time period."

2

No. 18-30562

At issue in this appeal is Policy 328 v.2 adopted by the Claims Administrator. It directs the Settlement Program's accountants to review claims to exclude in their Business Economic Loss calculations any income of the kind "not typically earned as revenue under the normal course of operations." This Policy directs exclusion of "related party transactions that are not arm's length transactions." It also states that the "Claims Administrator in his discretion may require that the claimant provide further explanation and/or additional documentation underlying the monthly revenue and related expense accounts in question."

The claimant here operates a motor vehicle dealership. The claimant filed a claim under the Settlement Agreement in March 2013. The Claims Administrator requested information concerning transactions between the claimant and two related entities. The claimant submitted the information, which generally showed that certain vehicles purchased by the claimant were sold to the two related entities at cost. The Claims Administrator could not determine whether transactions between the claimant and the related entities were arms-length transactions, and therefore decided to exclude the revenue from those transactions due to Policy 328 v.2. It did not exclude the earlier costs of those same vehicles from the calculation. The Claims Administrator ultimately awarded the claimant about $2.5 million.

The central point on this appeal is that the Claims Administrator calculated Variable Profit for the post-disaster period by removing related-party revenue from the revenue total for that period but did not remove the corresponding related-party expenses. The result was that the Variable Profit for the post-disaster period was lower, *i.e.*, the loss was greater, than if the related-party revenue remained in the calculation or the related-party

3

No. 18-30562

expenses had been removed.[1]  Here, as the Variable Profit in the period after the disaster decreases, the award for lost profits to the claimant increases.

BP sought review of that award by an Appeal Panel.  BP challenged the Claims Administrator's treatment of the claimant's related-party transactions. BP claimed that the Claims Administrator erred by failing to remove corresponding related-party expenses when it removed the related party revenue from the Variable Profit calculations.  BP's appeal included a proposed award of $0, whereas the claimant's proposed award was the amount awarded by the Claims Administrator.  The Appeal Panel ruled in favor of the claimant, finding that it was proper to exclude the related-party revenue from the calculation of compensation and that the related-party expenses were properly included because the claimant "had to buy and pay for the vehicles that it sold to the related party at cost."

Pursuant to the "baseball appeals" process required by the Settlement Agreement in which an Appeal Panel selects the party's Final Proposal closest to the correct result "and no other amount," the claimant's Final Proposal was

---

[1] An illustration follows.

| Pre-Disaster Period<br>*Revenues:* **$300**<br>*Expenses*: **$100** | Pre-Disaster Variable Profit (Rev. – Exp.)<br>**$300 – $100 = $200** | |
|---|---|---|
| | *Post-Disaster Variable Profit* | *Loss Calc.* |
| *Post-Disaster Period*<br><u>Revenues</u>: **$200**<br>*Non-Related:* **$175**<br>*Related-Party:* **$25**<br><u>Expenses</u>: **$100**<br>*Non-Related*: **$75**<br>*Related-Party*: **$25** | <u>Scenario #1</u>: *Include All Rev. & Exp.*<br>**$200 – $100 = $100** | $200 – $100 =<br>**$100** |
| | <u>Scenario #2</u>: *Exclude Rel. Rev.*<br>**$175 – $100 = $75** | $200 – $75 =<br>**$125** |
| | <u>Scenario #3</u>: *Exclude Rel. Rev. & Exp.*<br>**$175 – $75 = $100** | $200 – $100 =<br>**$100** |

No. 18-30562

accepted and BP's was rejected.  BP then sought discretionary review in the district court, which was denied.

DISCUSSION

This court reviews "the district court's denial of discretionary review for abuse of discretion."  *Claimant ID 100212278 v. BP Expl. & Prod., Inc.*, 848 F.3d 407, 410 (5th Cir. 2017).  To determine if the district court abused its discretion, this court decides "whether the decision not reviewed by the district court actually contradicted or misapplied the Settlement Agreement, or had the clear potential to contradict or misapply the Settlement Agreement."  *Id.* (quoting *Holmes Motors, Inc. v. BP Expl. & Prod., Inc.*, 829 F.3d 313, 315 (5th Cir. 2016)).  "It may [also] be an abuse of discretion to deny a request for review that raises a recurring issue on which the Appeal Panels are split if 'the resolution of the question will substantially impact the administration of the Agreement.'"  *Id.* (quoting *In re Deepwater Horizon*, 632 F. App'x 199, 203-04 (5th Cir. 2015)).

BP claims that the district court abused its discretion when it declined to review the Appeal Panel's decision in this claim because the Settlement Program contradicted or misapplied the Settlement Agreement.  Specifically, BP emphasizes that Variable Profit must be calculated by summing the monthly revenue over the time period, then subtracting the *corresponding* expenses.  If related-party revenue is removed from the Variable Profit calculation, BP argues that not subtracting related-party expenses from the remaining non-related-party revenue would violate the terms of the Settlement Agreement.

As to the claimant's arguments, it is correct that Policy 328 v.2 requires the exclusion of related-party revenue but says nothing about excluding associated costs.  The claimant also states that expenses may be considered in

5

the Claims Administrator's discretion under the Policy but the consideration is for the purpose of determining if related-party revenue should be excluded, not to include the expenses themselves.

The claimant also argues that if related-party revenue were to be removed for the period before the discharge of oil instead of after the discharge as it was here, BP would benefit because it would reduce overall recovery to claimants. Because the effects of the application of this Policy will vary, sometimes benefitting and other times disadvantaging BP, the claimant argues this is a "technical accounting issue that will turn on the unique circumstances of every claimant's business." The problem with that argument is that the calculations need to be properly made to uphold the interests of claimants and BP. If BP is advantaged by an improper calculation at times, then on those occasions a claimant has been harmed.

The claimant also relies on the fact that the district court in June 2018 held that Policy 328 v.2 did not authorize the exclusion of related-party expenses. Even if Policy 328 v.2 has already been interpreted by the district court in a manner consistent with what was done in this case, it is the Settlement Agreement that binds the parties and governs this dispute. *See, e.g.*, *In re Deepwater Horizon*, 858 F.3d 298, 300-01 (5th Cir. 2017).

We now turn to whether the Policy as interpreted is consistent with the Settlement Agreement, which requires that Variable Profit be calculated by summing the monthly revenue over the relevant period, then subtracting "the corresponding variable expenses from revenue over the same time period." The Settlement Agreement states that only *corresponding* variable expenses should be subtracted from the revenue included in the calculation to determine Variable Profit. Because we apply admiralty law to our interpretation of the terms of this agreement, we must avoid rendering terms meaningless. *See Chembulk Trading LLC v. Chemex Ltd.*, 393 F.3d 550, 555 (5th Cir. 2004).

Consequently, we must avoid making the word "corresponding" irrelevant. If revenue is removed pursuant to Policy 328 v.2, and that revenue is from related-party transactions, there may well be corresponding expenses as there were here. The expenses that remain from related-party transactions no longer correspond to anything in the monthly revenue, because the attendant revenue was excluded. We acknowledge that the Policy is concerned with the distortions caused by revenue from related-party transactions, and the corresponding expense side likely did not involve related parties. Apparently, it did not here. Still, if the related-party expenses are included in calculating Variable Profit and the corresponding revenue is not, the calculation is inconsistent with the Settlement Agreement because the subtracted expenses do not "correspond" to revenue.

We conclude that the Settlement Agreement is not being followed given the manner in which Policy 328 v.2 is being applied, or that an inadequate explanation for that approach has been provided. It is also the case that several examples of the application of this Policy appear to exist. Consequently, "the decision not reviewed by the district court actually contradicted or misapplied the Settlement Agreement." *Holmes Motors, Inc.*, 829 F.3d at 315 (citation omitted). Therefore, with respect, we conclude the district court abused its discretion when it declined to grant review.

We REMAND to the district court in order to remove the expenses from the calculation of Variable Profit that correspond with related-party revenue, or to have the Claims Administrator provide a sufficient accounting justification demonstrating there is no violation of the Settlement Agreement. The claimant's request for sanctions is hereby DENIED.

7