# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

April 12, 2019

Lyle W. Cayce
Clerk

No. 18-30798

BP EXPLORATION & PRODUCTION, INCORPORATED; BP AMERICA
PRODUCTION COMPANY; BP, P.L.C.,

Requesting Parties - Appellees

v.

CLAIMANT ID 100188324,

Objecting Party - Appellant

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:18-CV-5281

Before STEWART, Chief Judge, and DAVIS and ELROD, Circuit Judges.

PER CURIAM:*

The sole issue presented in this appeal is whether the claimant-appellant, a cruise line operator, is entitled to membership in the class under the Deepwater Horizon Economic and Property Damages Settlement Agreement ("Settlement Agreement"). The claimant-appellant is NCL Corporation, Ltd., through its subsidiary Norwegian Spirit, Ltd. (collectively

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 18-30798

"Norwegian"), and BP is the appellee.[1]  Norwegian's Business Economic Loss claim under the Settlement Agreement is based on cancelled reservations on one of its vessels, the Norwegian Spirit ("Spirit"), following the Deepwater Horizon disaster.

Norwegian's entitlement to class membership turns on whether it was "Home Ported" in the Gulf Coast Areas during the relevant time period.  The district court found that Norwegian failed to satisfy the Settlement Agreement's requirements and denied its claim.  As discussed below, we conclude that the district court erred in its interpretation of the definition of "Home Ported" under the Settlement Agreement.  We therefore REVERSE and RENDER judgment for the claimant, REMANDING this case to the Court Supervised Settlement Program ("Program") for the determination of the proper award to the claimant.

I.

The Settlement Agreement's class definition, in Section 1.2.3, includes within the class "[a]ll Entities doing business or operating in the Gulf Coast Areas or Specified Gulf Waters that . . . owned, operated, or leased a vessel that . . . was Home Ported in the Gulf Coast Areas at any time from April 20, 2010 to April 16, 2012."[2]  The "definitions" section of the Settlement Agreement, in turn, defines "Home Ported" as "the home port of a vessel as documented by a 2009 or 2010 government-issued vessel registration."[3]

---

[1] We refer to BP Exploration & Production, Inc., BP America Production Company, and BP, P.L.C. collectively as "BP."

[2] Economic and Property Damages Settlement Agreement, Section 1.2.3, http://www.deepwaterhorizoneconomicsettlement.com/docs/Amended_Settlement_Agreement_5.2.12_optimized.pdf#search [hereinafter Settlement Agreement].  The Settlement Agreement defines the Gulf Coast Areas as the states of Louisiana, Mississippi, and Alabama, as well as certain counties in Texas and Florida.  *Id.* at Section 38.80.

[3] *Id.* at Section 38.82.

No. 18-30798

This court has previously found that a cruise line company seeking membership in the Deepwater Horizon class may only join the class by satisfying the requirements of Section 1.2.3.[4]

II.

The Spirit's vessel registration was issued by the Commonwealth of the Bahamas in 2004.[5]  It lists the Spirit's "Port of Registry" as Nassau but does not provide a space for the inclusion of the vessel's Home Port.  The only visit the Spirit made to Nassau, according to the evidence in the record, was in September 2010 to seek refuge from Hurricane Igor.

Under a Berthing Agreement with the Port of New Orleans, Norwegian committed the Spirit, or an equal or larger replacement vessel, to the Port of New Orleans for seasonal "Homeported Operations" during six months of each year for three years, beginning on October 31, 2008.[6]

---

[4] *Claimant ID 100218776 v. BP Expl. & Prod., Inc.*, 712 F. App'x 372, 373, 376 (5th Cir. 2017) (per curiam) (unpublished).  While our unpublished opinions are not controlling precedent, they may be persuasive authority.  *See Ballard v. Burton*, 444 F.3d 391, 401 & n.7 (5th Cir. 2006) (citation omitted).  The claimant makes an alternative argument that the Spirit was "primarily docked" in New Orleans under Claims Administrator's Policy 467.  That policy defines "Facility" under the Settlement Agreement.  Because this court has previously held that cruise line companies are required to pursue class membership under Section 1.2.3 and cannot "sidestep" this requirement by seeking to enter the class as "physical facilities" under Section 1.2.1, *see Claimant ID 100218776*, 712 F. App'x at 373, 375-76, we doubt that the "primarily docked" analysis under Policy 467 applies to this claim.  However, we need not reach this issue, in light of our holding that the vessel at issue was Home Ported in New Orleans during the relevant time period.  Were we to consider the "primarily docked" issue, the record evidence indicates that the subject vessel would also be considered "primarily docked" in New Orleans.

[5] While the Settlement Agreement refers to a vessel registration from 2009 or 2010, the Spirit's registration is stamped October 2, 2012 and lists 2004 as the year of registry. The parties seem to agree that this registration is the proper document for our consideration. Therefore, we assume, for purposes of our analysis, that this registration is the Spirit's "2009 or 2010 government-issued vessel registration."

[6] Norwegian contends that this agreement was renewed for another three years but provides no evidence to support this proposition.

No. 18-30798

The Spirit's itineraries show that it embarked on cruises out of the following cities, where it received supplies and fuel and embarked and disembarked passengers:

January 2009 - April 2009:  New Orleans;

May 2009 - October 2009:  Boston (two days docked in Quebec City);

November 2009 - April 2010:  New Orleans;

April 2010 - October 2010:  Boston (two days docked in Quebec City); and

November 2010 - April 2012:  New Orleans.

In total, during the time period referenced in the Settlement Agreement's class definition (April 20, 2010 to April 16, 2012), the Spirit docked in New Orleans on seventy-five days, in Boston on twenty-seven days, and in Quebec City on two days.

### III.

In June 2013, Norwegian submitted its Business Economic Loss claim. On September 14, 2016, the Program's Claims Administrator denied the claim based on its finding that the business was located outside the Gulf Coast Areas. The Program apparently equated the Spirit's Port of Registry with its Home Port, as it concluded that the Spirit was not Home Ported in the Gulf Coast Areas because its vessel registration did not require a Home Port to be stated but listed Nassau as its Port of Registry.  The claimant next requested Reconsideration by the Program.[7]  Following Reconsideration, the Program found that the claim remained denied for the same reasons previously given.

On November 15, 2017, the claimant appealed the denial of its claim to an administrative appeal panel.  In the proceedings before the appeal panel, the parties submitted expert reports on the meaning of the term "Home Port"

---

[7] Reconsideration is available to claimants who believe the Program has "failed to take into account relevant information or data or did not follow the Settlement Agreement's standards governing th[e] claim."

and whether it is synonymous with the term "Port of Registry." BP's expert gave the opinion that the terms are synonymous and that the Spirit was therefore Home Ported in Nassau. The claimant's experts gave the opinions that the terms are not synonymous; the Port of Registry identifies a vessel on government documents and establishes a vessel's nationality, while the Home Port is the vessel's operational base, where it begins and ends its itineraries. One of the claimant's experts gave the opinion that the Spirit was Home Ported in New Orleans, based on its Berthing Agreement and itineraries.

On April 18, 2018, the administrative appeal panel issued its decision, which found that Norwegian had established class membership and remanded the claim to the Program for a determination of the proper award. The appeal panel agreed with the claimant's argument that the Settlement Agreement's definition of "Home Ported" required an analysis of the particular vessel's registration document, but that the definition was ambiguous as applied to this vessel because its registration "neither include[d] nor allow[ed] inclusion of a vessel's home port, as arguably envisioned by Section 38.82." The panel found that this ambiguity required the consideration of extrinsic evidence, and it therefore considered the parties' experts' declarations and appeared to credit the claimant's experts.

The administrative appeal panel stated that, during the time period specified in the Settlement Agreement's class definition (April 20, 2010 to April 16, 2012), the Spirit docked in New Orleans on 75 days and in Boston on 27 days. The panel also added that the Berthing Agreement provided for home porting privileges and obligations during the relevant time period. The panel ultimately found that the Spirit deserved membership in the class because it "had a contract by which it embarked and returned passengers in New Orleans, fueled, staffed and supplied itself in New Orleans, and otherwise exhibited itself as primarily a New Orleans-based vessel."

No. 18-30798

On May 3, 2018, BP requested discretionary review by the federal district court supervising the Program, which the district court granted. The district court concluded that Section 1.2.3 controls whether Norwegian is a class member. The district court declined to decide the parties' dispute over whether the Spirit's vessel registration document established that it was Home Ported in the Bahamas, or whether the document was silent as to the vessel's Home Port and therefore irrelevant.

The district court disagreed with the administrative appeal panel's finding that the Spirit was Home Ported in New Orleans. The court reasoned that the Berthing Agreement was a contract, not "'a 2009 or 2010 government-issued vessel *registration*' as required by the Settlement Agreement." The district court thus found that the claimant had "not submitted the documentation necessary to establish Class Membership under Section 1.2.3," reversed the appeal panel's decision, and reinstated the Claims Administrator's denial of the claim. Norwegian timely filed this appeal challenging the district court's judgment.

IV.

While this court generally reviews the district court's judgments in cases arising from the Settlement Agreement for abuse of discretion,[8] it is well settled that "[t]he interpretation of [the] settlement agreement is a question of contract law that this Court reviews de novo."[9] Therefore, this court reviews de novo the district court's legal conclusion in this case; that is, its interpretation of the Settlement Agreement.

---

[8] *BP Expl. & Prod., Inc. v. Claimant ID 100169608*, 682 F. App'x 256, 259 (5th Cir. 2017) (per curiam) (unpublished).

[9] *See In re Deepwater Horizon*, 864 F.3d 360, 363 (5th Cir. 2017) (quoting *In re Deepwater Horizon*, 785 F.3d 1003, 1011 (5th Cir. 2015)).

No. 18-30798

The Settlement Agreement, by its terms, is "interpreted in accordance with General Maritime Law."[10] "Under admiralty law, a contract 'should be read as a whole and its words given their plain meaning unless the provision is ambiguous.'"[11] "A provision is not ambiguous if 'its language as a whole is clear, explicit, and leads to no absurd consequences, and as such it can be given only one reasonable interpretation.'"[12] "If a provision is ambiguous, only then should its meaning should [sic] be resolved 'consistent with the intent of the parties.'"[13] "A court may 'look beyond the written language of the document to determine the intent of the parties.'"[14]

V.

This court has previously found that a claimant making a vessel-based claim under the Settlement Agreement may only join the class by satisfying the requirements of Section 1.2.3.[15] Therefore, Norwegian must establish that its vessel was "Home Ported" in the Gulf Coast Areas during the relevant time period, which is supplied by the Settlement Agreement's class definition: "at any time from April 20, 2010 to April 16, 2012."[16]

---

[10] Settlement Agreement, *supra* note 2, at Section 36.1.

[11] *Holmes Motors, Inc. v. BP Expl. & Prod., Inc.*, 829 F.3d 313, 315 (5th Cir. 2016) (quoting *Breaux v. Halliburton Energy Servs.*, 562 F.3d 358, 364 (5th Cir. 2009)).

[12] *BP Expl. & Prod., Inc. v. Claimant ID 100262795*, No. 18-30273, 2019 WL 113684, at *2 (5th Cir. Jan. 4, 2019) (per curiam) (unpublished) (quoting *Chembulk Trading LLC v. Chemex Ltd.*, 393 F.3d 550, 555 n.6 (5th Cir. 2004)).

[13] *Id.* (quoting *In re Deepwater Horizon*, 858 F.3d 298, 303 (5th Cir. 2017)).

[14] *Id.* (quoting *Corbitt v. Diamond M. Drilling Co.*, 654 F.2d 329, 332-33 (5th Cir. Unit A Aug. 1981)).

[15] *Claimant ID 100218776*, 712 F. App'x at 376.

[16] Settlement Agreement, *supra* note 2, at Section 1.2.3. BP argues that the Home Port must be established by 2009 or 2010, based the Settlement Agreement's definition of "Home Ported," which references the vessel's government-issued registration from those years. *Id.* at Section 38.82. In light of the different, specific date range in the Settlement Agreement's class definition, and in accordance with our prior caselaw on the "Home Ported" requirement, we disagree. *Claimant ID 100218776*, 712 F. App'x at 374 ("[Claimant] is a cruise-line company that operated ten foreign-flagged cruise ships throughout the Gulf of Mexico between April 2010 and April 2012—the relevant period for determining Class eligibility.").

No. 18-30798

The Settlement Agreement's definition of "Home Ported" directs the reader to the subject vessel's registration document, which, in this case, includes no space for listing the vessel's Home Port. We would agree with the district court's conclusion if the certificate of registry for the vessel in this case had listed a Home Port. Because the certificate did not list a Home Port or provide a space for listing one, we conclude that the "Home Ported" provision is ambiguous as applied to the facts of this case, and the administrative appeal panel correctly considered evidence beyond the language of the Settlement Agreement to resolve the ambiguity. The appeal panel made a thorough review of the record evidence, including the experts' reports, and resolved the ambiguity, exercising its discretion to credit the claimant's experts' reports and finding that New Orleans was the Spirit's Home Port during the relevant time period.

After reviewing the evidence, we agree with the appeal panel's resolution of this ambiguity and its finding that the Spirit was Home Ported in New Orleans during the relevant time period.

Pursuant to the Berthing Agreement, the Spirit docked in New Orleans seventy-two percent of the time during the relevant time period. It docked in Boston only twenty-six percent of the time, and in Quebec City only two percent of the time, during that period. The Spirit never operated from Nassau, the Port of Registry listed on its vessel registration. In fact, the only evidence in the record of the Spirit ever visiting the Bahamas is a single unexpected stop made to avoid Hurricane Igor in September 2010.

The appeal panel's interpretation of the "Home Port" definition is supported by the International Maritime Dictionary, which defines Home Port as "[t]he terminal port of a vessel; not necessarily the port of registry. The port

8

from which a ship operates."[17]  Also, this understanding of a vessel's Home Port, as its operational base, makes sense in light of the Settlement Agreement's purpose—to compensate individuals and entities affected by the spill.  This interpretation is further supported by the language of the class definition ("a vessel that . . . was Home Ported in the Gulf Coast Areas *at any time* from April 20, 2010 to April 16, 2012"), which suggests that the parties understood a vessel could have more than one Home Port during a given period.  Because of the thorough review of the record evidence by the appeal panel, we see no reason to remand this issue to the district court for further consideration.

Therefore, we reverse the district court's judgment and render judgment for the claimant, remanding this case to the Settlement Program for a determination of the proper award to the claimant.

VI.

For these reasons, we conclude that the district court erred in its interpretation of the Settlement Agreement's definition of "Home Ported." Accordingly, we REVERSE and RENDER judgment for the claimant, REMANDING this case to the Settlement Program for the determination of the proper award to the claimant.

---

[17] RENÉ DE KERCHOVE, INTERNATIONAL MARITIME DICTIONARY 376-77 (2d ed. 1961).